**HERITAGE HOMES OF ATTLEBORO, INC., Plaintiff, Appellee,**

**v.**

**The SEEKONK WATER DISTRICT, Defendant, Appellant.**

**HERITAGE HOMES OF ATTLEBORO, INC., Plaintiff, Appellant,**

**v.**

**The SEEKONK WATER DISTRICT, Defendant, Appellee.**

**Nos. 80–1646, 80–1704.**

United States Court of Appeals, First Circuit.

Argued Feb. 13, 1981.

Decided March 31, 1981.

As Amended by Order Dated May 18, 1981.

John J. Graham, Boston, Mass., with whom William E. Hickey, Quincey, Mass., was on brief, for Seekonk Water Dist.

Stephen D. Clapp, N. Attleboro, Mass., with whom Armstrong, Pollis & Clapp, N. Attleboro, Mass., was on brief, for Heritage Homes of Attleboro, Inc.

Before COFFIN, Chief Judge, ALDRICH, Circuit Judge and WYZANSKI, District Judge.*

COFFIN, Chief Judge.

This case returns to us after the district court found that there was overwhelming evidence to support the allegations that we previously found to have stated a claim. *See Des Vergnes v. Seekonk Water District,* 601 F.2d 9 (1st Cir. 1979). Heritage Homes is a corporation engaged in real estate development. It sued the defendant Seekonk Water District for refusing—because Heritage was willing to sell homes to black persons—to include a Heritage development within the District and thus to supply the development with water. The district court found the District liable under 42 U.S.C. §§ 1981 and 1983. It refused to award Heritage compensatory damages because "plaintiff has effectively passed its losses on to the buyers of its homes." Nonetheless it awarded $100,000.00 in punitive damages against the District "[i]n order to discourage the obviously racially discriminatory policy of the District." Both sides appeal. Since the nature of the claim is explained in our earlier opinion, here we add only such facts as become necessary to explain our reasoning.

Considering first the District's appeal, we briefly respond to those arguments by the District that merit comment. First, we have previously decided the District's arguments drawn from *Village of Arlington Heights v. Metropolitan Housing Development,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), and *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). *See* 601 F.2d at 13.

■ Second, the District asserts that, because the actions of the Town Planning Board are not within the control of the District, the district court's reference to events at a Board meeting was "immaterial." The Board meeting took place immediately following a District meeting. Both were forums for expressions of hostile and incriminating opinion against Heritage's real estate development. Such circumstances permit an inference that persons opposing the development left the earlier meeting to attend the later one. Community attitudes and events can become relevant when "the acts of voters 'may fairly be said to represent official policy.'" 601 F.2d at 15. Ironically, elsewhere in its brief the District criticizes the district court for failing to appreciate "the necessity for con-

* Of the District of Massachusetts, sitting by designation.

sidering much more than random scraps of a [District] proceeding to determine what happened." We do not think that the district court erred by referring to the entire context to assess the plaintiff's charge of racial motivation.

■ Third, the District claims that evidence of statements made at the District meeting was hearsay and thus improperly admitted. With one exception, the District did not object to the admission of this evidence. The single exception related to evidence that was offered on at least two other occasions without objection. We thus review for plain error, and have difficulty in finding any error at all. Our examination of these statements indicates that they were not offered to prove the truth of the matters they assert. For instance, one witness testified to hearing a person at the meeting state the developers would "bring all of the black people from East Providence to this project." Such statements demonstrate that those at the meeting made or heard racially hostile remarks prior to voting against the real estate development. *See* Fed.R.Evid. 801(c) & 803. The fact, not the truth of the assertion, is the critical element. The District's other evidentiary arguments either are inconsequential or seek to retry disputes of fact whose resolution is properly within the discretion of the finder of fact.

■ Fourth, the District's argument that its "decisionmaking process ... is ... not subject to evaluation" is foreclosed by *Owen v. Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (no qualified immunity for § 1983 municipal defendants), since the District does not explain how it differs from a municipality for this purpose.

■ Finally, the odious character of the discrimination in this case is a sufficiently "aggravating circumstance[ ]" *Fact Concerts, Inc. v. Newport*, 626 F.2d 1060, 1067 (1st Cir. 1980), *cert. granted,* — U.S. —, 101 S.Ct. 782, 66 L.Ed.2d 603 (1980), to support the award of punitive damages. The record in this case was adequate to permit the finder of fact to conclude that the District engaged in a deliberate and remarkably overt display of racial discrimination. Although we share our dissenting brother's concern that courts ought not too quickly levy punitive damages against public bodies, we are struck by the thought that insulating such bodies.(even where the improper motive, as here, is "overwhelmingly established") would result in allowing the most blatant discrimination to avoid the risk of punitive damages so long as there is open participation, while punishing only minions who act beyond the confines of council rooms. This would be a particularly ironic result in cases where actual damages are trivial, as they often are in cases of racial discrimination.

Turning to Heritage's appeal on its injury award, we note that it suffered two types of damages due to the District's discrimination: increased water supply costs and an approximate two year delay from 1976 to 1978 in developing the housing investment. The former cost arose from the need to drill private wells for each lot instead of simply connecting each to the District's water supply. The latter resulted from Heritage's efforts to persuade the District to admit it and, this failing, from its search for an adequate alternative water supply.

The first cost is measured by subtracting the expense to which Heritage would have been put in connecting with the District from the total cost of drilling the individual wells. The district court figured this cost to be $43,690.44 (calculated by subtracting $28,475.00 from $72,165.44). Heritage does not challenge this sum.

■ The second alleged cost arises from the fact that Heritage was forced to invest in assets during a time when it would have preferred to complete its development and sell out. This asserted damage would be the value attributed to the loss of use of the funds during the period when Heritage was reasonably precluded from selling the property. The conventional measure is the appropriate interest rate. In this case, assuming that Heritage moved with reasonable diligence to obtain the alternative water

supply, the record lacks not only evidence of the appropriate interest rate but, more importantly, evidence that the appreciation in value of the property over the entire period was less than what interest on the amount invested would have yielded. We therefore have no alternative but to hold that compensatory damages attributable to loss of use of money were not proven.

Heritage consequently has succeeded in proving actual damages of $43,690.44. Its failure to prove more simply confines the award to this sum, and does not, as the district court thought in its "passing on losses" analysis, cancel out the damages that Heritage *has* demonstrated.

■ Finally, Heritage requests prejudgment interest on its compensatory damages. It acknowledges that prejudgment interest in civil rights cases is not mandatory in this circuit. *Furtado v. Bishop*, 604 F.2d 80, 98 (1st Cir. 1979). It argues, however, that prejudgment interest is required to make injured parties whole when the injuries they suffer are not "intangible". *Id.* at 97. We agree, noting that this normally will be a matter within the sound discretion of the district court and that "in appropriate circumstances compensatory principles must be tempered by an assessment of the equities." *Cargill, Inc. v. Taylor Towing Service, Inc.*, 642 F.2d 239, at 242 (8th Cir. 1981). Since the equities of this case do not mandate further tempering, we remand this case to the district court for entry of an award of $43,690.44 plus prejudgment interest on compensatory damages. In all other respects the district court's judgment is *affirmed*. Plaintiff is awarded costs, to include counsel fees in this court, the amount of the latter to be determined by the district court in connection with the pending motion for fees in that court.

ALDRICH, Senior Circuit Judge (dissenting in part).

I agree with the court that the District's improper motive was overwhelmingly established. In this circumstance this is a classic case for considering punitive damages in the true punitive sense. However, I am troubled by the concept that beneficial owners, or customers, of a quasi public utility, or the taxpayers in a municipality, should be punished for actions over which they had, at best, only remote control. A few of the members of defendant District voted against this particular conduct; it appears that most did not vote at all. Nevertheless, the court, bringing to fruition its indication in *Fact Concerts v. City of Newport*, ante, would have these members extensively punished, when their very maximum offense would seem to be negligence. I would think the burden of compensatory damages and attorney's fees enough.

Alternatively, this type of case does not seem to me an appropriate medium to further the deterrent aspect of punitive damages. I wonder how likely this example will serve to get out the voters in some other, unconnected, organization and make them "vote right."

Finally, punitive damages is a highly subjective matter. However improper the conduct in the present case, it is not to be overlooked, when considering the applicability of the principle to this type of defendant, that the mere possibility that some jury may award punitive damages may have a more deterrent effect upon the freedom to vote than that freedom should be burdened with. In sum, I share the thoughts of the district court in *Valcourt v. Hyland*, D.Mass., 1980, 503 F.Supp. 630, 637–40, and would vacate the punitive damage award.