**WEST ZION HIGHLANDS, an Illinois partnership, and Lloyd Levine, Plaintiffs,**

v.

**CITY OF ZION, a municipal corporation, John Spencer, L. Howard Bennett, Lemuel Boy, Larry Hacker and Marjorie Sennholtz, Defendants.**

No. 82 C 2675.

United States District Court, N.D. Illinois, E.D.

Sept. 30, 1982.

Frank M. Greenfield, Frank M. Greenfield, Ltd., Chicago, Ill., for plaintiffs.

Wallace B. Dunn, Highwood, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Partnership West Zion Highlands ("Highlands") and one of its partners, Lloyd Levine, sue the City of Zion, Illinois ("Zion"), its Mayor and City Council members under a variety of civil rights laws. Defendants have moved to dismiss the Complaint for a potpourri of reasons. Their motion is granted in part and denied in part.

### FACTS [1]

▪ · Highlands has been since 1969 the equitable owner and developer of a 70 acre parcel of vacant land (the "parcel") at the northeast corner of 21st and Kenosha Roads in Zion, Illinois. In the summer of 1970 Zion annexed the parcel via a planned unit development ("PUD") ordinance zoning the parcel for 1400 residential units in low-rise, two-story and three-story buildings and three 15-story and five ten-story buildings.

For years Highlands was unable to begin construction, largely through inability to obtain financing for such an ambitious development. In 1978 Highlands applied to the U.S. Department of Housing and Urban Development ("HUD") for financing. HUD conducted a preliminary study and found a need for low and moderate income rental housing existed in the Zion area. It then issued a preliminary commitment for financing.

In accordance with HUD's regular practice, its mortgage commitment required that 20 percent of the tenants in the proposed development receive rental subsidies under "Section 8," at 42 U.S.C. § 1437f. In the Zion area, a large percentage of residents qualifying for Section 8 subsidization would be blacks or other minority group members. Moreover, federal regulations require that units in such developments be rented on a non-discriminatory basis and that developers pursue an affirmative program of racial integration. In sum, HUD's involvement made certain that the project would ultimately house a large percentage of black or other minority group members.

In the fall of 1979, after HUD's preliminary commitment Zion amended the 1970 ordinance in several respects: to permit construction of 417 units (down from 1400) in buildings of no more than two stories and to require Highlands to pay increased costs for water and sewer installations and to make contributions to some Zion school districts. Because the PUD special use permit under the amended ordinance was given only a two-year life, if significant construction did not begin by October 2, 1981 the parcel's zoning would then revert to single family dwelling use.

In September 1981 Highlands asked the City Council to extend the amended ordinance to April 30, 1982. Zion granted the extension, but with two conditions:

(1) No more than 20% of the project's units would be rented at any time to tenants receiving Section 8 subsidies.

(2) Highlands would cause HUD to agree with Zion to restrict occupancy by Section 8 tenants to that 20% figure.

HUD refused to enter into such an agreement, so Zion instead executed an agreement with Highlands that neither it nor subsequent purchasers of the parcel would allow more than 20 to 21% of the tenants to be Section 8 recipients. That agreement

---

1. As always, all well-pleaded allegations of the Complaint are taken as true upon this motion to dismiss. In that respect defendants seek to strike various allegations of the Complaint for reasons wholly out of tune with the notice pleading concept underlying Fed.R.Civ.P. 8(a). That part of their motion is of course denied.

was enacted as a city ordinance October 20, 1981.

Before the April 30, 1982 deadline under the amended ordinance, HUD made a final commitment for mortgage insurance on the project. But for budgetary reasons HUD could not actually fund its commitment. Pursuant to an order in another case pending in this District Court, *Gautreaux v. Chicago Housing Authority,* 66 C 1460, HUD's mortgage commitment for Highlands' project has been extended even though funds have not been appropriated.

Its lack of actual HUD funding forced Highlands to ask another extension from the City Council. On April 20, 1982 the Council refused to grant the extension, so that the parcel reverted to single-family zoning ten days later. Before the April 20 public hearing, Zion had advised Highlands (Complaint ¶ 25):

> ... the requested extension would be denied because the community did not desire any more "undesirable" people in Zion and the real problem was the requirement of the federal government that 20% of the tenants be eligible and receive rental subsidies.

More precisely, Highlands contends (Complaint ¶ 26):

> The refusal of the Defendants to extend the subject Ordinances was founded upon their desire to prevent the development from being completed. The racial hostility which was communicated to the Defendants by Zion residents dictated the action of the Defendants.

### Highlands' Various Claims

Highlands now seeks to enjoin that illegal race-grounded discrimination and to recover damages for its injuries, based upon the Fourteenth Amendment's Equal Protection Clause and a number of federal statutes: the Civil Rights Acts of 1964, 42 U.S.C. § 2000d ("Title VI"); the Fair Housing Act of 1968, 42 U.S.C. § 3601 ("Title VIII");

The post-Civil War Civil Rights Acts, 42 U.S.C. §§ 1981–83; and the Housing Act of 1949, 42 U.S.C. § 1441. Defendants have moved to dismiss all those claims. This opinion will discuss them seriatim.

■ Highlands cannot state a cause of action under the provision of Title VI that:

> No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

As the statutory language makes plain, a threshold requirement for maintaining a Title VI action is that the *defendant* actually be a recipient of the federal financial assistance used in the discriminatory manner. *See Dowdell v. City of Apopka,* 511 F.Supp. 1375, 1384 (M.D.Fla.1981).[2] Because the Complaint can make no such allegation, the motion to dismiss is granted as to Highlands' Title VI claim.

■ Highlands' Title VIII claim stands in a different light. That statute makes unlawful race discrimination in the rental or sale of housing or in the provision of services or facilities in connection with rentals or sales. Defendants contend Highlands' position as a developer rather than a *minority* protected by Title VIII confers no standing to bring their action.

That contention has no force after the Supreme Court's decision in *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372–73, 102 S.Ct. 1114, 1120–21, 71 L.Ed.2d 214 (1982), which relied upon *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). *Havens Realty* squarely held (102 S.Ct. at 1121):

> Thus the sole requirement for standing to sue under § 812 [of the Fair Housing Act of 1968, 42 U.S.C. § 3612] is the Article III minima of injury-in-fact: That the plaintiff allege that as a result

---

**2.** Indeed, there might well be a requirement under Title VI that the discrimination must in some manner involve the programs actually receiving federal assistance. *See Tayyari v.*

*New Mexico State University,* 495 F.Supp. 1365, 1376 (D.N.M.1980). But this harder question need not be resolved to decide the pending motion.

of the defendant's actions he has suffered "a distinct and palpable injury."

*Havens* therefore held persons other than the individuals deprived of housing could have " '. . . such a personal stake in the outcome of the controversy' as to warrant [their] invocation of federal-court jurisdiction" (quoting *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977)).[3]

Highlands certainly has suffered a "distinct and palpable injury" here: It is prevented from proceeding with its planned development because of defendants' racial discrimination. Accordingly it has standing to proceed with its Fair Housing Act claim, and defendants' motion for dismissal is denied.

■ As for the issue posed but not decided by *Arlington Heights,* 429 U.S. at 263, 97 S.Ct. at 562—whether a developer has standing under the Equal Protection Clause to challenge the effect on prospective minority tenants of a racially exclusionary zoning decision—the question need not be decided in those terms.[4] Case law under the Civil Rights Acts plainly confers the necessary standing.

*Des Vergnes v. Seekonk Water District,* 601 F.2d 9, 13–14 (1st Cir.1979) upheld the standing under 42 U.S.C. § 1981 of a developer plaintiff who had made race-discriminatory exclusionary allegations just like Highlands' here. After its discussion of existing case law, including *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), the Court explained (601 F.2d at 14, emphasis in original):

> Those cases stand for two propositions: to invoke § 1981 or § 1982 one need not be a member of the racial class protected by the statute and one need not even be able to identify any specific member of

the class who suffered or may suffer discrimination . . . .

From *Sullivan* and cognate cases under § 1981, we conclude that, in order to effectuate the public policy embodied in § 1981, and in order to protect the *legal rights* of non-whites expressly created by § 1981, a person has an implied *right of action* against any other person who, with a racially discriminatory intent, interferes with his right to make contracts with non-whites. *A fortiori,* a person has an implied *right of action* against any other person who, with a racially discriminatory intent, injures him because he made contracts with non-whites. Because Heritage comes within each of those two rules it has statutory standing to sue.

*Accord, Gordon v. City of Cartersville, Georgia,* 522 F.Supp. 753, 755 (N.D.Ga. 1981); *Riccobono v. Whitpain Township,* 497 F.Supp. 1364 (E.D.Pa.1980); *Fralin & Waldron, Inc. v. County of Henrico, Virginia,* 474 F.Supp. 1315 (E.D.Va.1979); and (though pre-*Arlington Heights* ) *Park View Heights Corporation v. City of Black Jack,* 467 F.2d 1208, 1212–14 (8th Cir.1972).

Highlands' claims under the original Civil Rights Acts (42 U.S.C. §§ 1981–83) and implementing Equal Protection Clause rights clearly stand on the same footing. Defendants' challenge asserts in part that the ordinance extension was not racially motivated, but that factual dispute cannot be asserted on a motion to dismiss. Defendants' attack fails.

■ It is not really clear whether Highlands also relies directly on the Housing Act of 1949, 42 U.S.C. § 1441, to ground a claim against defendants. If it does, as defendants say, the claim must be dismissed. That statute is simply a statement of broad Congressional policy, not intended to provide a remedy.

---

3. *See also* Note, 91 Harv.L.Rev. 1427, 1684–86 (1978), which anticipates the Supreme Court's holding in *Havens Realty.*

4. Although a party ordinarily needs only one ticket to gain admission, alternative theories can make a difference. For example punitive

damages under the Fair Housing Act are limited to $1,000, 42 U.S.C. § 3612(c), and are not so limited under the Equal Protection Clause. That illustration is purely exemplary: Highlands has made no claim for punitive damages.

This Court has considered defendants' other scattergun arguments in favor of dismissal and has found them without merit.[5]

## CONCLUSION

Defendants' motion to dismiss is granted as to Highlands' claims under 42 U.S.C. §§ 2000d and 1441. In all other respects the motion is denied. Defendants are ordered to answer the Complaint on or before October 15, 1982.

---

**5.** Three items bear brief additional comment:

(1) Highlands itself may sue in its common name under the specific provisions of Fed.R. Civ.P. 17(b)(1).

(2) In view of Highlands' standing, no purpose seems to be served by inclusion of one of its two partners, Lloyd Levine, as a co-plaintiff. It would appear preferable to have neither partner or both as parties litigant. In any case the flaw (if any) is non-fatal.

(3) Defendants have suggested, but the parties have not decisively addressed, whether First National Bank of Highland Park (the "Bank"), as title holder of the parcel, must be joined as a plaintiff to spare defendants the risk of incurring multiple obligations. It would seem that in an Illinois land trust, Highlands (the beneficial owner) is the only party that would sustain damage from defendants' actions—and would thus be the real party in interest. To avoid any possible problem, however, the Court suggests Highlands consider adding the Bank as a party to the action.