829 F.2d 36
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Stanley MCCAULEY, Plaintiff-Appellant,
v.
CITY OF JACKSONVILLE, NORTH CAROLINA; R. L. Davis, in his
individual capacity as Chief City Inspector of the City of
Jacksonville; Patrick A. Thomas, in his individual capacity
and in his official capacity as City Manager of the City of
Jacksonville; James E. Caldwell in his individual capacity
and in his official capacity as City Manager of the City of
Jacksonville; Horace Mann, in his individual capacity and in
his official capacity as City Planner of the City of
Jacksonville; A. F. McRorie, in his individual capacity and
in his official capacity as Public Utilities Director of the
City of Jacksonville; A. D. Guy, Jr., in his official
capacity as Mayor of the City of Jacksonville; Jacksonville
City Council, their successors and agents, Defendant-Appellee.
 No. 86-1674
 United States Court of Appeals, Fourth Circuit.
 Argued April 7, 1987.
Decided September 8, 1987.
 
 J. Michael McGuinness (Charles S. Lanier, Gordon E. Robinson, Jr., on brief), for appellant.
 Anthony H. Brett (Womble, Carlyle, Sandridge & Rice, Rudolph A. Ashton, III, Summrell, Sugg & Carmichael, on brief), for appellees.
 Before K.K. HALL and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Stanley McCauley appeals the judgment of the district court dismissing his suit against the City of Jacksonville, North Carolina, and various city officials (collectively the city) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. We reverse.
 
 
 2
 * McCauley, a real estate developer, alleged that he owns property in the Mill Creek Basin in Jacksonville. On April 15, 1985, the city issued him a building permit for construction of a 37-unit apartment complex on his property. On May 21, 1985, the Jacksonville City Council issued a moratorium on future building permits until its June 4 meeting. At that meeting the city council continued its building permit moratorium. The council also decided that no new sewer connections would be permitted in the Mill Creek Basin. It created exceptions to the sewer moratorium for persons to whom building permits had been issued before May 21, 1985. The council held a special meeting on June 10 to discuss the issue of sewer overload in the Mill Creek Basin.
 
 
 3
 On June 20, 1985, the chief city inspector issued a stop order for work under McCauley's building permit. Five days later, on June 25, the city manager denied McCauley's requests for sewer connections. The next day McCauley notified the city manager that he had spent a substantial sum in reliance on the building permit. However, his request that his case be put on the agenda of the next city council meeting was denied.
 
 
 4
 On July 9, 1985, the Jacksonville city council held a second special meeting on the issue of sewer connections in the Mill Creek Basin. At that meeting the public utilities director stated that the sewer line could handle more than 250 additional connections. The council adopted a policy limiting sewer connections in the Mill Creek Basin to single family residential lots.
 
 
 5
 McCauley's second request that the city council consider his case was turned down by the city manager. The North Carolina Department of Insurance refused McCauley's July 15 appeal of the stop order on the ground that it had jurisdiction only over stop orders issued for alleged violations of the state building code. At the time McCauley received his permit, his property was zoned RA-6, a classification that allowed both single-family dwellings and multi-family apartments. On September 3, 1985, the city council redefined the RA-6 zoning classification to exclude multi-family units.
 
 
 6
 In addition, McCauley's complaint alleged that his planned apartment complex would have supplied low-income housing in Jacksonville and would have been racially integrated, alleviating in part the racial segregation of housing in the city. He alleged that the actions of city officials in imposing the stop order, denying the sewer connections, and rezoning had both the purpose and the effect of denying housing opportunities on the basis of race. He also alleged that the city's actions were 'arbitrary, capricious, irrational, pretextual, premised upon trivial reasons, and were not necessary to serve any legitimate or compelling governmental interest.' He claimed that these actions violated the fifth and fourteenth amendments, the Fair Housing Act, 42 U.S.C. Secs. 3604, 3608, and 3617, and the Civil Rights Acts of 1866 and 1871, 42 U.S.C. Secs. 1981, 1982, and 1983. He also asserted state pendent claims for breach of contract, interference with contractual relations, and negligence.
 
 
 7
 The city filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. The district court granted the motion.
 
 II
 
 8
 A court should grant a motion to dismiss under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff cannot prove any set of facts entitling him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The court must accept as true all material allegations in the complaint, construing them in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969). A complaint should not be dismissed because the court doubts the plaintiff will prevail on the merits. Adams v. Bain, 697 F.2d 1213, 1216 (4th Cir. 1982). Dismissal is justified only when the face of the complaint clearly shows that the plaintiff is not entitled to relief. Thomas W. Garland, Inc. v. City of St. Louis, 596 F.2d 784, 787 (8th Cir. 1979). Tested by these principles, the motion should have been denied.
 
 
 9
 McCauley primarily contends that the city revoked his building permit, denied sewer service, and rezoned his property to prevent racial integration of his apartment project. The city, asserting that its policy was racially neutral, contends that McCauley's allegations are insufficient to support this claim and that he lacks standing to press it.
 
 
 10
 We are not persuaded by the city's stand. McCauley alleged the city suffers a housing shortage, that his project would offer low to moderate income housing, and that it would be racially integrated, alleviating to some extent residential racial segregation in the city. He alleged that the city's acts and omissions have perpetuated existing residential segregation. He specifically charged that the city's actions in blocking construction of his project 'had the purpose and effect of denying housing opportunities on the basis of race or color.'
 
 
 11
 Our precedents have rejected arguments similar to the city's. McCauley need not allege that he is a member of a minority race, nor need he with certainty allege that potential tenants would be black. See Scott v. Greenville County, 716 F.2d 1409, 1414 (4th Cir. 1983). McCauley's allegation about the 'purpose and effect' of the city's action is sufficient to state a claim of intentional discrimination under the fourteenth amendment and the Civil Rights Acts of 1866 and 1871. His allegation of 'effect' of the city's action is sufficient to state a claim based on the Fair Housing Act. See Smith v. Town of Clarkton, 682 F.2d 1055, 1065 (4th Cir. 1982).
 
 
 12
 As Scott v. Greenville County, 716 F.2d at 1414-16, demonstrates, McCauley, a developer of racially integrated housing, has standing to bring an action based on the fourteenth amendment and Sec. 1983 to redress the city's alleged ban of his project on racial grounds. Standing is founded on both his alleged injury resulting from the city's conduct and his function as a developer to assert the rights of prospective minority tenants.
 
 
 13
 Similar rationale affords McCauley standing to base his claim for relief on the Fair Housing Act. See Park View Heights Corporation v. City of Black Jack, 467 F.2d 1208, 1212-14 (8th Cir. 1972); West Zion Highlands v. City of Zion, 549 F. Supp. 673, 675-76 (N.D. Ill. 1982). In Havens Realty Corp. v. Coleman, 455 U.S. 363, 372 (1982), the Court reiterated that Congress intended standing under the enforcement provisions of the Fair Housing Act, 42 U.S.C. Sec. 3612, 'to extend to the full limits of Article III and that the courts accordingly lack the authority to create prudential barriers to standing . . .' McCauley has alleged the existence of a controversy arising from an injury caused by the city. His complaint sufficiently alleges he has offered to provide racially integrated housing, the city has denied him sewer services because of race in violation of Sec. 3604(b) and interfered in violation of Sec. 3617 with his aiding and encouraging prospective minority tenants to rent the housing that he proposes. Contrary to the city's argument, it is immaterial that McCauley has not alleged that the project is federally funded. The Fair Housing Act prohibits discriminatory interference with private efforts to construct integrated housing. Smith v. Town of Clarkton, 682 F.2d at 1068.
 
 III
 
 14
 In response to McCauley's allegation that the city's actions denied him the equal protection of the laws in violation of the fourteenth amendment, the city asserts that the complaint does not allege unequal treatment of persons similarly situated. The city also maintains that a rational basis exists for its classification of sewage users because it has a legitimate interest in not overloading the system.
 
 
 15
 The city misses the import of McCauley's complaint. The Civil Rights Act of 1866, 42 U.S.C. Secs. 1981 and 1982, secure to all black citizens the equal protection of the laws by affirming their right to enter into contracts and to lease property without racial discrimination. McCauley, as the only effective advocate of potential black tenants, has standing to 'vindicate the rights of minorities protected by Sec. 1982.' See Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 237 (1969). Also, McCauley, having alleged injury because the city intentionally discriminated against him on the basis of race by depriving him of the opportunity to build integrated housing, can maintain this action to vindicate his own right to the equal protection of the laws. See Des Vergnes v. Seekonk Water District, 601 F.2d 9, 13-14 (1st Cir. 1979).
 
 
 16
 Other allegations state a cause of action for denial of the equal protection of the laws. Persons who had obtained a building permit before May 21 were exempted from the sewage moratorium. McCauley was not afforded the benefit of this exemption although he had obtained his permit on April 15. McCauley alleged that 250 hookups were available and the system has the capacity to serve his project.
 
 
 17
 The city's argument that its interest in not overloading its sewage system justified the classification that excluded McCauley is not supported by the record. The complaint does not allege that the sewage system is overloaded or that McCauley would overload it. The city is confined to the allegations of the complaint on its Rule 12(b)(6) motion for dismissal.
 
 IV
 
 18
 In support of his claim that he has been deprived of his building permit without due process of law, McCauley alleged that he notified the city he had expended a substantial amount of money in good faith reliance on the building permit issued April 15. He also alleged that the stop order and subsequent action of the city, which were taken without notice and hearing to block his project, denied him procedural due process.
 
 
 19
 State law determines whether a developer has a property interest in a building permit. Scott v. Greenville County, 716 F.2d at 1418. North Carolina law recognizes a property interest in a building permit when the developer has made substantial expenditures in reliance on the permit. Keiger v. Board of Adjustment, 281 N.C. 715, 719, 190 S.E.2d 175, 178 (1972). McCauley sufficiently alleged a property interest in the building permit.
 
 
 20
 McCauley need not allege that he has exhausted state administrative and judicial remedies. Patsy v. Board of Regents, 457 U.S. 496, 500-01 (1982). He must, however, show that the administrative ruling was final in order to obtain judicial review. Williamson Planning Commission v. Hamilton Bank, 473 U.S. 172, 192-94 (1985). North Carolina Gen. Stat. Sec. 160A-421 provides for appeals from building inspectors' stop orders to the North Carolina Commissioner of Insurance. Pursuant to this statute, McCauley's timely appealed the stop order that halted his project. The Commissioner, however, declined to hear the appeal because it did not involve an alleged violation of the building code. We conclude that McCauley has sufficiently established the finality of the stop order to withstand the Rule 12(b)(6) motion. The city's reliance on N.C. Gen. Stat. Sec. 16A-388 to demonstrate that McCauley is not entitled to judicial review is misplaced. This statute deals with appeals to the board of adjustment. The board's powers are specifically set forth. They do not include adjudication of charges of racial discrimination, violation of constitutional provisions, or violations of federal statutes pertaining to fair housing. Consequently, McCauley was not obliged to appeal to the board of adjustment before bringing this action. See Williamson Planning Commission, 473 U.S. at 193.
 
 
 21
 We therefore conclude that McCauley's allegations are sufficient to state a claim of deprivation of property without due process of law.
 
 V
 
 22
 McCauley's trial and appellate briefs disclose that the allegation that his property was taken without just compensation in violation of the fifth and fourteenth amendments refers only to his building permit, not his land. Regulatory revocation of a valid building permit in which the developer has a property interest as determined by state law may amount to a confiscatory taking of the permit. See Scott v. Greenville County, 716 F.2d at 1421. But an action based on the federal constitution is premature when the owner has not sought compensation through state procedures. Williamson Planning Commission, 473 U.S. at 194-97. McCauley has not alleged the absence or inadequacy of state procedures to award him just compensation for the allegedly unlawful taking of his permit. Consequently count eleven of his complaint does not state a cause of action based on the fifth and fourteenth amendments of the constitution. Unless McCauley can amend to eliminate its deficiencies, the count should be dismissed without prejudice.
 
 VI
 
 23
 The district court dismissed McCauley's state pendent claims for lack of a subsisting federal claim. In view of our decision, the pendent claims should be reinstated for consideration on their merits.
 
 
 24
 The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.
 
 K. K. HALL, Circuit Judge, dissenting:
 
 25
 I cannot agree with the majority's conclusion that McCauley has stated a valid claim of racial discrimination. For this reason, I respectfully dissent.
 
 
 26
 The factual allegations of McCauley's complaint clearly supply a compelling nondiscriminatory reason for the land use actions taken by the city of Jacksonville. Consistent with sound land use planning principles, low density land use was favored by the City to the exclusion of all other users in order to maximize the development potential of the Mill Creek Basin area. Absent such restrictions, a few high-density users, such as McCauley, could consume all of the available sewer capacity, leaving a substantial portion of the area totally undeveloped.
 
 
 27
 McCauley's objections to the land use restrictions in this case are of the sort that have been uniformly rejected by the United States Supreme Court since its seminal decision in Village of Euclid, Ohio, v. Ambler Realty Co., 272 U.S. 365 (1926). Simply because a municipality's designation of permitted uses may adversely affect the value of private property does not violate any constitutional right of the owners.[1] Nor may McCauley claim a constitutional right to utilize his property in a manner which provides him with the greatest economic benefit. See City of Eastlake v. Forest City Enterprises, Inc., 426 U.S. 668 (1976); Goldblatt v. Town of Hempstead, New York, 369 U.S. 590 (1962).
 
 
 28
 This case involves nothing more than a builder's attempt to force high-density development into an area in which such development is clearly inappropriate. In my view, the record clearly and unequivocally demonstrates that a legitimate, racially-neutral policy has prevented McCauley from constructing the project of his choice.
 
 
 29
 Accordingly, I would affirm the judgment of the district court dismissing the complaint. I, therefore, respectfully dissent.
 
 
 
 [1]
 The United States Supreme Court has recently emphasized that there must be a close nexus between the land use restriction and the state interest it purports to serve. Nollan v. California Coastal Commission, 55 U.S.L.W. 5145 (U.S. June 23, 1987). Clearly, in this case, the City's restriction promotes a legitimate state interest without denying the owner all economically viable use of his land