USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 94-2024 JAMES BENJAMIN, JR., M.D., Plaintiff, Appellant, v. THE AROOSTOOK MEDICAL CENTER, INC., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ____________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ James P. Chandler with whom Chandler & Robertson was on brief for __________________ ____________________ appellant. Christopher D. Nyhan with whom Elizabeth J. Wyman and Preti, ______________________ ____________________ ______ Flaherty, Beliveau & Pachios were on brief for appellees. ____________________________ ____________________ June 19, 1995 ____________________ STAHL, Circuit Judge. This appeal arises from an STAHL, Circuit Judge. ______________ action brought by Dr. James Benjamin, Jr., and several of his patients against the Aroostook Medical Center ("TAMC"), alleging the racially-motivated termination of Benjamin's staff privileges.1 The district court dismissed the patients' claims, holding that they lacked standing to challenge TAMC's actions. Subsequently, the court dismissed Benjamin's claims with prejudice, explaining that Benjamin's counsel had failed to make himself available for proceedings and to respond to notices from the court. We affirm the dismissal of the patients' claims and modify the district court's order dismissing Benjamin's claims so that it operates without prejudice. I. I. __ Background Background __________ On February 12, 1992, Benjamin, a physician of African-American descent, submitted a completed application for staff privileges to TAMC. TAMC did not approve Benjamin's application, but instead, on October 12, 1992, granted him a "provisional appointment." Benjamin had licenses to practice medicine in California, Connecticut, Minnesota and Maine, and had received a certification in the  ____________________ 1. In addition to TAMC, the complaint designates several named and unnamed TAMC officers, agents, employees and staff physicians as defendants. For purposes of this opinion, we will refer to all defendants collectively as "TAMC."  -2- 2 "Specialty of Internal Medicine" from the American Board of Internal Medicine. TAMC, which is located in Presque Isle, Maine, has approximately forty-five physicians on its medical staff and it does not allow physicians without staff privileges to treat patients at its facilities. At the time of Benjamin's appointment, TAMC had no African-American physician on its staff. On October 11, 1993, TAMC's Medical Staff Executive Committee recommended that TAMC terminate Benjamin's provisional staff privileges. Subsequently, on January 7, 1994, Benjamin and seventeen of his patients commenced this action pro se in federal district court alleging that TAMC, ___ __ through discriminatory policies and practices, had denied Benjamin staff privileges on account of his race. On February 11, 1994, the district court issued a scheduling order setting forth discovery deadlines and an expected trial date for August 1994. The district court amended the scheduling order twice to extend the time, first for Benjamin and then for TAMC, to designate expert witnesses. On March 4, 1994, TAMC filed a motion to dismiss the patients' claims for lack of standing. After Benjamin and the patients responded through newly obtained counsel, the district court granted the motion, finding that the patients had not sufficiently alleged that they had suffered any "injury-in- fact" as a result of the hospital's actions. -3- 3 On April 29, 1994, Benjamin's counsel sought to withdraw, citing irreconcilable differences with Benjamin. The district court granted the motion, pending an appearance by replacement counsel (or by Benjamin pro se). On May 31, ___ __ 1994, Benjamin's counsel renewed the motion to withdraw, and the district court ordered Benjamin to show cause why he had not obtained new counsel. On June 8, 1994, TAMC filed a motion to dismiss, arguing that Benjamin had failed to make himself available for a deposition and had obstructed TAMC's efforts to complete discovery. Two days later, TAMC filed a second motion to dismiss and/or for summary judgment, arguing that Benjamin's claims failed on the merits. On June 16, 1994, James P. Chandler of Washington, D.C., entered a notice of appearance on behalf of Benjamin and simultaneously moved to enlarge the time to respond to TAMC's pending motions to dismiss. The district court granted this motion, giving Benjamin and his new counsel until July 15, 1994, to respond. On July 7, 1994, Chandler became seriously ill and was hospitalized in Washington, D.C. At the time of his hospitalization, Chandler had not responded to TAMC's motion nor consulted with Benjamin's former counsel. On July 15, 1994, a law clerk for Chandler moved for an additional enlargement of time on account of Chandler's sudden illness. The district court denied the motion in light of TAMC's objection and because it was improperly filed by an -4- 4 individual without authority to practice before the court. On August 2, 1994, Chandler filed another motion for enlargement of time, which the district court denied by endorsement. On August 17, 1994, the district court held a hearing on TAMC's pending motions to dismiss at which neither Chandler nor Benjamin appeared. Noting that, since Chandler's appearance on Benjamin's behalf, Chandler had neither made himself available for any proceedings nor responded to notices from the court, the district court granted TAMC's motion to dismiss with prejudice. This appeal followed. II. II. ___ Discussion Discussion __________ We address two issues on appeal. First, Benjamin's patients contest the district court's finding that they lack standing to assert their claims against TAMC. Second, Benjamin argues that his counsel's sudden and severe illness should excuse his failure to make himself available and respond to notices from the court. A. The Patients' Claims ________________________ At oral argument, counsel for the patients and Benjamin asserted that the patients' standing argument rested -5- 5 primarily on 42 U.S.C. 1981.2 The patients contend that they have standing because TAMC's actions interfered with their 1981-protected right to contract with Benjamin, a minority physician. TAMC, however, maintains that the patients themselves have no legally cognizable injury and, at best, only assert the third-party rights of Benjamin. After careful review, we conclude that, on the facts alleged in this case, the patients do not have standing.  The burden of alleging facts necessary to establish standing falls upon the party seeking to invoke the jurisdiction of the federal court. Warth v. Seldin, 422 U.S. _____ ______ 490, 518 (1975); United States v. AVX Corp., 962 F.2d 108, _____________ _________ 114 (1st Cir. 1992). We review de novo a district court's __ ____  ____________________ 2. 42 U.S.C. 1981 provides in relevant part: (a) Statement of equal rights Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . . (b) "Make and enforce contracts" defined  "Make and enforce contracts" defined  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. -6- 6 standing determination, employing an approach that, in practice, differs little from that used to review motions to dismiss under Fed. R. Civ. P. 12(b)(6). AVX Corp., 962 F.2d _________ at 114. In conducting our review, we are obliged to "accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party." Warth, 422 U.S. at 501; see also Adams v. Watson 10 F.3d 915, _____ ___ ____ _____ ______ 919 (1st Cir. 1993). "Standing is the determination of whether a specific person is the proper party to bring a particular matter to the Court for adjudication." Erwin Chemerinsky, Federal Jurisdiction 2.3, at 48 (1989). The "inquiry _____________________ involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth, 422 U.S. at 498; see also Vote Choice, Inc. v. _____ ___ ____ __________________ DiStefano, 4 F.3d 26, 36 (1st Cir. 1993). The constitutional _________ limitations derive from the language of Article III that provides, inter alia, that federal courts shall resolve _____ ____ disputes involving only "Cases" or "Controversies." AVX ___ Corp., 962 F.2d at 113. The Supreme Court has interpreted _____ this general constitutional proscription as setting forth three fundamental requisites of standing that every litigant invoking the jurisdiction of the federal courts must possess: (1) injury-in-fact -- an invasion of a legally-protected interest that is both concrete and particularized, and actual -7- 7 or imminent; (2) causation; and (3) redressability. Lujan v. _____ Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Libertad _____________________ ________ v. Welch, No. 94-1699, slip op. at 10-11 (1st Cir. Apr. 28, _____ 1995). Several prudential considerations also infuse standing determinations. These considerations, which militate against standing, principally concern whether the litigant (1) asserts the rights and interests of a third party and not his or her own, (2) presents a claim arguably falling outside the zone of interests protected by the specific law invoked, or (3) advances abstract questions of wide public significance essentially amounting to generalized grievances more appropriately addressed to the representative branches. Libertad, slip op. at 11. Consideration of these ________ prudential factors enables the federal judiciary "to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal ___ courts to those litigants best suited to assert a particular ____ ______ claim." Gladstone, Realtors v. Village of Bellwood, 441 U.S. ___________________ ___________________ 91, 99-100 (1979) (emphasis added); see also Conservation Law ___ ____ ________________ Found. of New England v. Reilly, 950 F.2d 38, 41 (1st Cir. ______________________ ______ 1991). For purposes of this appeal, we need not resolve whether the patients have met the constitutional requisites of standing, rather we believe that, because the patients' -8- 8 allegedly infringed-upon rights fall outside what we have previously found to be protected by 1981, the patients essentially assert the third-party rights of Benjamin rather than their own. Furthermore, because the patients have not satisfied the minimum requirements for an exception to the prudential rule against third-party standing, and because the reasons underlying the rule obtain in this case, we believe the district court did not err in dismissing their claims.  Whether a party is asserting its own rights, as opposed to seeking to vindicate the rights of a third party, is often a difficult question. See generally, Henry P. ___ _________ Monaghan, Third Party Standing, 84 Colum. L. Rev. 277 (1984). ____________________ Though the patients claim a direct infringement of their right to contract with a minority physician, at its essence, we believe their claim is more accurately described as an assertion of Benjamin's third-party right to a race-neutral review process. Primarily, the patients' allegedly infringed-upon rights fall outside what we, and other courts, have previously found to be protected by 42 U.S.C. 1981.3 Most  ____________________ 3. Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, e.g., ____ Flast v. Cohen, 392 U.S. 83, 90 (1968), _____ _____ it often turns on the nature and source of the claim asserted. . . . [T]he source of the plaintiff's claim to relief assumes critical importance with respect to the prudential rules of standing that, -9- 9 cases brought pursuant to 1981 involve allegations of discriminatory conduct prompted by hostility towards the plaintiff's race. See Dartmouth Review v. Dartmouth College, ___ ________________ _________________ 889 F.2d 13, 17 (1st Cir. 1989). Occasionally, however, courts have allowed cases to proceed where a plaintiff challenges a discriminatory action motivated by animosity towards another person's race. See, e.g., Des Vergnes v. ___ ____ ___________ Seekonk Water Dist., 601 F.2d 9, 13-14 (1st Cir. 1979); ____________________ Winston v. Lear-Siegler, Inc., 558 F.2d 1266, 1268-70 (6th _______ __________________ Cir. 1977); DeMatteis v. Eastman Kodak Co., 511 F.2d 306, _________ __________________ 311-12 (2d Cir.), modified on other grounds, 520 F.2d 409 ________ __ _____ _______ (1975). Such cases have generally been limited to situations in which the plaintiff was the direct target of the defendant's discriminatory action. In Des Vergnes, for _____________ example, a water district acted directly against the non- minority developer by refusing the developer's request to include a tract of land proposed for low-income minority housing in the water district. Des Vergnes, 601 F.2d at 11- ___________ 12. Consequently, we held that the non-minority developer  ____________________ apart from Art. III's minimum requirements, serve to limit the role of the courts in resolving public disputes. Essentially, the standing question in such cases, is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting a person in the plaintiff's position a right to judicial relief. Warth, 422 U.S. at 500.  _____ -10- 10 had standing under 1981 even though the water district's alleged discriminatory action was motivated by animosity towards the race of the prospective tenants and not the race of the developer. Id. at 14. Other cases most typically ___ involve a discriminatory employment action (e.g., firing) ____ taken by an employer directly against a non-minority employee because of that employee's association with, or advocacy of, minorities. See, e.g., Alizadeh v. Safeway Stores, Inc., 802 ___ ____ ________ ____________________ F.2d 111, 114 (5th Cir. 1986) (white plaintiff fired because married to minority spouse); Winston, 558 F.2d at 1270 (white _______ employee fired for advocating rights of minority); cf. Phelps ___ ______ v. Wichita Eagle-Beacon, 886 F.2d 1262, 1266-67 (10th Cir. _____________________ 1989) (white lawyer had standing under 1981 to sue newspaper that published allegedly false articles about him because he represented minorities). Here, the patients challenge an action by TAMC neither motivated by animosity towards the patients' race nor specifically targeted at, or taken directly against, the patients. The patients' alleged injury arises only as a derivative effect of TAMC's administration of its general policies governing the grant and review of physician staff privileges. Cf. Department of Labor v. Triplett, 494 U.S. ___ ___________________ ________ 715, 720 (1990) (standing may exist where "enforcement of a restriction against a litigant prevents a third party from ________ entering into a relationship with the litigant (typically a -11- 11 contractual relationship), to which the third party has a legal entitlement") (emphasis added); see generally Monaghan, ___ _________ 84 Colum. L. Rev. at 306-11 (discussing the distinction between direct and indirect interference with right to interact as a limit on standing). The direct injury in this case is TAMC's alleged discriminatory revocation of Benjamin's staff privileges, which TAMC directed specifically at Benjamin on account of Benjamin's race. Furthermore, the patients do not allege that TAMC's action completely precluded them from receiving treatment. TAMC has other physicians on staff who practice in Benjamin's specialty, and the patients do not allege that TAMC has refused to admit them as patients. Finally, neither does the fact that Benjamin cannot treat the patients at TAMC completely disrupt the patients' relationship with Benjamin: TAMC's revocation of Benjamin's staff privileges does not preclude him from treating the patients outside of TAMC facilities. Accordingly, because the patients' injury occurs, if at all, only as a derivative effect of TAMC's action against Benjamin, we hold that, in attempting to bring their claims under 1981, they are asserting Benjamin's third-party rights, and not their own. See Mackey v. ___ ______ Nationwide Ins. Co., 724 F.2d 419, 421-22 (4th Cir. 1984) ____________________ (insurance agent challenging insurer's redlining policy is asserting third-party rights of homeowners); Capital Nat'l _____________ -12- 12 Bank of N.Y. v. McDonald's Corp., 625 F. Supp. 874, 882 ______________ ________________ (S.D.N.Y. 1986) (non-minority lender to minority franchisee asserts only third-party rights of minority franchisee in challenge to franchisor's alleged discriminatory termination of franchisee's contract). While the general proscription on third-party standing is not absolute, Powers v. Ohio, 499 U.S. 400, 410 ______ ____ (1991); Warth, 422 U.S. at 500-01, no exception to the ban is _____ applicable in this case. In Powers, the Supreme Court stated ______ that an individual seeking to assert the rights of a third party must, as a prerequisite, satisfy three specific criteria: "The litigant must have suffered an 'injury in fact,' . . . ; the litigant must have a close relationship to the third party; and there must exist some hindrance to the ____ _____ ____ _________ third party's ability to protect his or her own interests." Powers, 499 U.S. at 411 (citations omitted) (emphasis added); ______ see also Playboy Enters. v. Public Serv. Comm'n of P.R., 906 ___ ____ _______________ ___________________________ F.2d 25, 37-39 (1st Cir.), cert. denied, 498 U.S. 959 (1990). _____ ______ Assuming arguendo that the patients could satisfy ________ the first two criteria, they clearly fail to establish the third. No hindrance exists in this case that prevents the third party, Benjamin, from asserting his own rights. In order to satisfy this criterion, a party must show that some barrier or practical obstacle (e.g., third party is ____ unidentifiable, lacks sufficient interest, or will suffer -13- 13 some sanction) prevents or deters the third party from asserting his or her own interest. See, e.g., Powers, 499 ___ ____ ______ U.S. at 414-15 (lack of economic incentive); Clifton Terrace _______________ Assocs. v. United Technologies Corp., 929 F.2d 714, 721 (D.C. _______ _________________________ Cir. 1991) (no barriers because, inter alia, third parties _____ ____ are plainly identifiable); Playboy Enters., 906 F.2d at 37-38 _______________ (threat of official sanction) Here, the injured party is clearly identified and has sufficient interest in the litigation (e.g., professional reputation) to pursue (and, in ____ fact, has pursued) the action. Accordingly, the patients have not met the minimum requisites for third-party standing. Furthermore, our holding, that Benjamin, and not the patients, is the proper party to bring an action against TAMC, is consistent with the policies underlying the prudential rule against third-party standing. See Singleton ___ _________ v. Wulff, 428 U.S. 106, 114 (1976) (general proscription on _____ third-party standing may be avoided where the "underlying justifications are absent"). Indeed, one of the principal justifications for the rule is that it assures that the party bringing the litigation will be the "most effective advocate of the rights at issue." Duke Power Co. v. Carolina Envtl. ______________ _______________ Study Group, Inc., 438 U.S. 59, 80 (1978); see also Secretary _________________ ___ ____ _________ of State v. Joseph H. Munson Co., 467 U.S. 947, 955 (1984) ________ _____________________ (rule against third-party standing guarantees that issues essential to litigation will be "concrete and sharply -14- 14 presented"). Here, because the merits of the action turn largely on an evaluation of Benjamin's performance at TAMC, he, and not the patients, is clearly the best party to assert the claim. Not only would Benjamin be best able to contest TAMC's assertion of professional incompetence, but, in addition, he would likely be far more able to point to specific instances of conduct attributable to TAMC that suggest a discriminatory motive. Indeed, it is far from clear that the patients, who would not be privy to all the particulars of Benjamin's relationship with the hospital, could effectively proceed without Benjamin's participation. To summarize, because the patients' claims fall outside what we, and other courts, have previously found to be protected by 1981, we believe the patients assert the third-party rights of Benjamin and not their own. Furthermore, because the patients have not met the minimum requisites for third-party standing, we hold that the district court did not err in dismissing their claims. B. Benjamin's Claims _____________________ Benjamin contends that the district court erred in granting TAMC's motion to dismiss with prejudice. Benjamin maintains that the district court granted the motion essentially because his counsel failed to prosecute the action by not responding to TAMC's motion to dismiss or appearing at the August 17 hearing. Benjamin argues, -15- 15 however, that these failures are excusable in light of his attorney's sudden and serious illness. We treat the district court's dismissal as issued pursuant to Rule 41(b).4 We review dismissals under Rule  ____________________ 4. Fed R. Civ. P. 41(b) provides in relevant part: For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits. TAMC contends that the district court dismissed Benjamin's claims pursuant to Local Rule 19(c) and not Rule 41(b). Local Rule 19(c) provides that the failure to file a timely written response to a pending motion will waive any objections to that motion. U.S. Dist. Ct. Me. Gen. R. 19(c). Our reading of the district court's order, however, convinces us that it was acting pursuant to Rule 41(b). The district court did not cite Local Rule 19(c) in ordering the dismissal of the case. Neither did the district court state that the dismissal was compelled because Benjamin's failure to respond constituted a waiver of any objection to the motion. Instead, the district court reasoned, "Because the plaintiff, through counsel, has failed to make himself available for any proceedings since the appearance of Mr. Chandler and since the plaintiff, through counsel, has not responded to notices from the Court, defendant's Motion to Dismiss plaintiff's actions is hereby GRANTED with _______ prejudice." We think this rather terse statement makes apparent that the court's motivation stemmed more from its displeasure at Benjamin and Chandler's failure either to appear at the hearing or to notify the court (and opposing counsel) of their expected absence, than just Benjamin and Chandler's (arguably) excusable failure to respond to TAMC's motion to dismiss. -16- 16 41(b) for abuse of discretion. Capo v. United States, 7 F.3d ____ _____________ 283, 284 (1st Cir. 1993); Enlace Mercantil Internacional, ________________________________ Inc. v. Senior Indus., Inc., 848 F.2d 315, 317 (1st Cir. ____ ____________________ 1988). Claims of abuse of discretion under Rule 41(b) typically have "not received a sympathetic ear from us." Damiani v. Rhode Island Hosp., 704 F.2d 12, 17 (1st Cir. _______ ___________________ 1983) (collecting cases). At the same time, this "does not mean we have rubber-stamped the decisions of the district court." Id. Dismissal with prejudice "is a harsh sanction," ___ Richman v. General Motors Corp., 437 F.2d 196, 199 (1st Cir. _______ ____________________ 1971), which runs counter to our "strong policy favoring the disposition of cases on the merits." Zavala Santiago v. _______________ Gonzalez Rivera, 553 F.2d 710, 712 (1st Cir. 1977). As a ________________ result, we have indicated that such an option should be employed only when a plaintiff's misconduct is particularly egregious or extreme. See, e.g., Estate of Solis-Rivera v. ___ ____ ______________________ United States, 993 F.2d 1, 2 (1st Cir. 1993); see also Cosme _____________ ___ ____ _____ Nieves v. Deschler, 826 F.2d 1, 2 (1st Cir. 1987) ("[i]n all ______ ________ the cases in which we have upheld a dismissal for want of prosecution, we have found either extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct or some other aggravating circumstance"). In reviewing the trial court's actions, we engage in an "open-ended balancing test," giving appropriate consideration to all relevant factors. Figueroa ________ -17- 17 Ruiz v. Algria, 896 F.2d 645, 648 (1st Cir. 1990); see also ____ ______ ___ ____ HMG Property Investors, Inc. v. Parque Indus. Rio Canas, ______________________________ __________________________ Inc., 847 F.2d 908, 917 n.13 (1st Cir. 1988). ____ If the district court's order ensued solely because Attorney Chandler's sudden illness prevented him from responding to TAMC's motion to dismiss, Benjamin's argument would have significantly more bite. Indeed, we have suggested that, in deciding a motion for an extension of time, a district court's failure to allow for factors beyond a party's control, such as the unexpected illness of counsel, may, in a certain case, constitute an abuse of discretion. See Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 584 ___ _______________ __________________ (1st Cir. 1994) (finding no abuse of discretion in denial of motion for enlargement of time where, inter alia, party does _____ ____ not advert to "circumstances beyond a party's control, such as an attorney's illness"); cf. Smith-Weik Mach. Corp. v. ___ _______________________ Murdock Mach. & Eng'g Co., 423 F.2d 842, 844 (5th Cir. 1970). _________________________ In this case, however, other factors obtain, most importantly Chandler's failure to appear at the August 17 hearing or to notify the court and opposing counsel in advance of his expected absence. See Simpson v. Welch, 900 F.2d 33, 34-35 ___ _______ _____ (4th Cir. 1990) (no abuse of discretion to dismiss pursuant to Rule 41(b) where counsel did not respond to summary judgment motion or appear at hearing on motion). Moreover, Chandler's failure to appear occurred after the court had -18- 18 already extended the time to respond to TAMC's motion to dismiss upon Chandler's late appearance in the case. Cf. 9 ___ Charles A. Wright & Arthur R. Miller, Federal Practice and _____________________ Procedure 2352, at 402 (2d ed. 1995) (prior delays relevant _________ in evaluating denial of continuance). On the other hand, though Chandler's failure to notify the district court and opposing counsel that he would not be present at the August 17 hearing cannot be overlooked, we believe that, when viewed in context, the egregiousness of his conduct becomes somewhat mitigated. TAMC does not dispute that Chandler, who lives in Washington, D.C., was seriously ill. Indeed, Chandler had apprised the district court and opposing counsel of the severity of his illness through two motions for enlargement of time filed on July 15 and August 2. The August 2 motion expressly states that "The prognosis of [Chandler's] primary care physician is that [Chandler] will not be able to resume his court duties until after mid-August." Thus, we think that Chandler provided the court and TAMC at least some notice that he might not be able to attend the August 17 hearing. Moreover, the district court scheduled the date of the August 17 hearing only after Chandler filed the second motion for enlargement of time. Finally, the litigation, at the time of the court's dismissal, was less than one year old. -19- 19 We sympathize with the district court's frustration in the face of counsel's failure to appear, and we fully appreciate the district court's need to control its docket. Furthermore, we "wholeheartedly endorse the use of stiff sanctions, including dismissal [with prejudice], where appropriate." Velazquez-Rivera v. Sea-Land Serv., Inc., 920 ________________ ____________________ F.2d 1072, 1079 (1st Cir. 1990). While we agree that Chandler's failure to appear or to notify the court warrants punishment, we believe that, in this case, the district court's use of the ultimate sanction of dismissal with prejudice was a step too far. Hence, we modify the order of the district court to a dismissal without prejudice. See 9 ___ Wright & Miller, Federal Practice and Procedure 2373, at _______________________________ 402 ("The decision of the trial court to dismiss with prejudice may be reviewed on appeal and the appellate court may order the dismissal to be without prejudice."). III. III. ____ Conclusion Conclusion __________ For the foregoing reasons, we affirm the dismissal of the patients' claims and modify the district court's order dismissing Benjamin's claims to operate without prejudice. -20- 20