**COUNCIL OF CO–OWNERS OF ASH-FORD MEDICAL CENTER a/k/a Ashford Medical Center Building, Plaintiff,**

v.

**Eileen T. MENDEZ, Defendant.**

**Civil No. 95–1511(SEC).**

United States District Court, D. Puerto Rico.

Dec. 27, 1995.

Russell A. Del–Toro, Del Toro & Santana, Hato Rey, PR, for Plaintiff.

Federico Lora–Lopez, San Juan, PR, for Defendant.

## ORDER

CASELLAS, District Judge.

Pending before the Court is defendant's Motion for Summary Judgment (Docket # 5) and plaintiff's Counter Motion for Summary Judgment (Docket # 13). In the present case, plaintiff seeks a declaratory judgment against defendant arising out of her objection to a proposed remodelling of certain physical facilities, which belong to both parties. Plaintiff alleges that such remodelling is necessary in order to comply with the Americans with Disabilities Act (hereinafter "A.D.A."). Defendant has successfully objected to the project, pursuant to the provisions of the Puerto Rico Horizontal Property Law, which requires owners of the building to obtain the unanimous consent from all of the building's co-owners. Accordingly, plaintiff claims that a declaratory judgment will determine whether the A.D.A. preempts the Horizontal Property Law of Puerto Rico, inasmuch as the latter imposes conditions which impede compliance with Federal Law and National Public Policy.

Defendant submitted a Motion for Dismissal or Summary Judgment, pursuant to 12(b)(1), 12(b)(6) and 56(c) of the Federal Rules of Civil Procedure. Defendant claims that plaintiff lacks standing to pursue its suit in federal court under the A.D.A. statute.

Upon careful examination of the uncontested material facts, the Court finds that plaintiff lacks standing under the A.D.A. statute. Accordingly, we **GRANT** defendant's Summary Judgment Motion for lack of subject matter jurisdiction, **DENY** plaintiff's Counter Motion for Summary Judgment and **DISMISS** plaintiff's claim.

### FACTS

Plaintiff, the Council of Co-owners of Ashford Medical Center, also known as Ashford Medical Center Building, (hereinafter "Ash-

ford") is a legal person, defined, created and authorized to appear before the Court by the Horizontal Property Act of the Commonwealth of Puerto Rico. Defendant Eileen T. Mendez (hereinafter "Mendez") is the owner of office number 506 of the Ashford Medical Center. The building in question is used exclusively as private offices dedicated to providing medical services and facilities and is open to the general public. The Ashford Medical Center was built in 1962 and, shortly thereafter, converted to the Horizontal Property Regime, as authorized by the Horizontal Property Act.

This dispute revolves around the estimated construction costs which the proposed remodelling of the Ashford building would entail. Plaintiff sought to construct a third elevator chute adjacent to the bathroom areas and enlarge the bathroom areas in the building. Ashford had met with architects and engineers to draw the plans for the elevator's construction. In the 1992 annual assembly the plaintiff presented to the building co-owners the plan for the construction of the elevator at the building's north end. This remodelling, which would affect the exterior facade of the building, required the unanimous consent of the co-owners, pursuant to the Puerto Rico Horizontal Property Law.[1] The assembly unanimously approved the project at a cost of $396,000. This sum would be raised by special apportionment by each co-owner.

Ashford, however, miscalculated the estimated costs. After obtaining the co-owners' approval, the architect and the engineer in charge of the remodelling project obtained several formal bids for the elevator's construction, all of which exceeded $700,000. This amount resulted in a much more expensive project than the one initially approved by the co-owners. This cost discrepancy prompted several co-owners to file a complaint on April 7, 1994 in the Superior Court of San Juan against Ashford. They alleged

that Ashford had failed to build the approved elevator for $396,000. Although plaintiff and defendant dispute about the outcome of the case filed in state court, both parties agree that the defendant in the present case, Mendez, was not a party in the above mentioned complaint.

On November 8, 1994, Ashford called a meeting, where it submitted a new remodelling proposal to the assembly of co-owners. Although plaintiff and defendant dispute the exact number of co-owners that approved the new proposal, both parties agree that the defendant Mendez refused to give her consent to the new proposal. Therefore, pursuant to the requirement of unanimous consent mandated by the Puerto Rico Horizontal Property Law, Ashford could not implement its remodelling proposal. Plaintiff's action for declaratory judgment ensued.

Plaintiff alleges that its failure to remodel the building's facilities would result in substantial fines and penalties due to its lack of compliance with the statutory provisions of the A.D.A. Neither party contests the fact that the co-owners have not been notified by their Board of Directors of a single complaint raised by any disabled person against the building's facilities.[2]

## SUMMARY JUDGMENT

■ According to Fed.R.Civ.P. 56(c), a summary judgment motion should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the nonmoving party is entitled to judgment as a matter of law. *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue

1. Section 1291p, titled "Prohibition of new construction and other work without unanimous consent" reads, in pertinent part: "No co-owner may, **without the unanimous consent of the others,** build new floors, dig basements or make excavations, or undertake any works that may affect the safety, solidity and maintenance of the building." 31 Laws of Puerto Rico Annotated (Butterworth, 1993) (emphasis added).

2. Defendant's Statement of Material Facts (Docket # 5, paragraph 9); Plaintiff's Answer to Defendant's Statement of Uncontested Facts (Docket # 13, paragraph 9).

of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a dispute to be "genuine", there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir.1992). *See also, Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989). By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir.1994).

Moreover, this Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (citing *Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines,* 42 F.3d at 684.

## ANALYSIS

Plaintiff's jurisdictional basis rests on its claim that unless a third elevator is built, the government may impose substantial fines against the Council of Co-owners for its non-compliance with the A.D.A. The speculative nature of this claim is not sufficient to establish jurisdiction pursuant to this federal statute. As correctly noted by defendant, federal courts are courts of limited jurisdiction, thus mere invocation of federal jurisdiction, without more, is meaningless and does not by itself confer federal jurisdiction. "In order to give rise to federal jurisdiction a case must involve" a substantial claim founded directly upon federal law. *Inter–American Univ. of P.R. v. Concepcion,* 716 F.2d 933, 934 (1st Cir.1983). The present case does not meet such requirements.

### A. Standing/Case or Controversy

Standing is the determination of whether a specific person is the proper party to bring a particular matter to the Court for adjudication. Erwin Chemerinsky, *Federal Jurisdiction* § 2.3, at 48 (1989). This inquiry "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *see also Vote Choice, Inc. v. DiStefano,* 4 F.3d 26, 36 (1st Cir.1993). As noted by the First Circuit Court, the constitutional limitations derive from the language of Article III which orders federal courts to resolve disputes involving only "Cases" or "Controversies" *United States v. AVX Corp.,* 962 F.2d 108, 113 (1st Cir.1992).

The Supreme Court has set forth three fundamental requisites of standing that every litigant invoking the jurisdiction of the federal courts, must possess: (1) injury in fact—an invasion of a legally-protected interest that is both concrete and particularized, actual or imminent (2) causation and (3) redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *Libertad v. Welch,* 53 F.3d 428, 436 (1st Cir.1995).

Moreover, several prudential considerations pervade standing determinations. These considerations, which counsel against standing, principally concern whether the litigant (1) asserts the rights and interests of a third party and not his or her own, (2) presents a claim arguably falling outside the zone of interests protected by the specific law invoked, or (3) advances abstract questions of wide public significance essentially amounting to generalized grievances more appropriately addressed to the representative branches of government. *Benjamin v. Aroostook Medical Center,* 57 F.3d 101, 104 (1st Cir. 1995).

These prudential factors enable the federal judiciary "to avoid deciding questions of broad social import where no individual rights would be vindicated *and* to limit access to the federal courts to those litigants *best suited* to assert a particular claim." *Gladstone, Realtors v. Village of Bellwood,*

441 U.S. 91, 99–100, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979) (emphasis added); *see also Conservation Law Found. of New England v. Reilly*, 950 F.2d 38, 41 (1st Cir.1991).

We proceed to discuss each of these factors below:

## I. Actual or Imminent Harm of Legally Protected Interest

 The Supreme Court has noted that a party has standing when the alleged action has caused him or her "injury in fact" and where the injury was "arguably within the zone of interest" to be "protected or regulated" by the statute. *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). A closer reading of the statute under which Ashford bases its federal claim reveals that the only individual authorized by law to bring a cause of action under the A.D.A. statute must have a disability or a physical or mental impairment. Section 12182, titled "Prohibition of discrimination by public accommodations" reads, in pertinent part:

"No **individual** shall be discriminated against **on the basis of disability** in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases

to), or operates a place of public accommodation." (emphasis added) [3]

Section 12102 clarifies the terms used in the section 12182: " 'disability' with respect to an individual, means: (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." [4]

 Plaintiff Ashford seeks to invoke jurisdiction under 12181(7)(F), since it considers that the building they seek to remodel is a "public accommodation" subject to the prohibition against discrimination.[5] The Court acknowledges that the building may be subject to the limitations of the A.D.A., since it is used as a professional office of a health care provider. Defendant argues that the statute's protection should encompass those owners of "public accommodations" who seek to provide access to disabled individuals, but cannot comply due to state ordinances. The Court declines to give such a broad interpretation to the A.D.A. on the facts before us. Plaintiff Ashford is not a disabled individual. It does not claim to represent a group of disabled individuals.[6] Most importantly, plaintiff has not been subject to complaints by any group of individuals who would be protected under the statute.[7]

3. 42 U.S.C.A. § 12182(a) (West 1995).

4. 42 U.S.C.A. § 12102(2)(a), (b), (c) (West 1995).

5. Section 12181(7)(F), titled "Public Accommodations and Services Operated by Private Entities", reads in pertinent part: "The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce: ... a laundromat, dry cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, **professional office of a health care provider, hospital or other service establishment** (emphasis added)."

6. Plaintiff may claim that it is protecting the rights of third parties, like its present and future patients, who will be unable to access the medical offices without this new elevator. (Plaintiff's

Answer to Defendant's Statement of Uncontested Facts (Docket # 13, paragraph 10)). This argument also fails since plaintiff fails to meet the requisites of standing to assert the rights of a third party. The Supreme Court's criteria is: the litigant must have suffered an 'injury in fact', the litigant must have a close relationship to the third party and there must exist some hindrance to the third party's ability to protect his or her own interests *Benjamin v. The Aroostook Medical Center, Inc.*, (1st Cir.1995) (citing *Powers v. Ohio*, 499 U.S. 400, 410, 411, 111 S.Ct. 1364, 1371, 113 L.Ed.2d 411 (1991)). As discussed above, plaintiff fails to meet the injury in fact requirement; although plaintiff could claim a close relationship with some of its patients, there is no evidence to show a hindrance to the patients' ability to protect their own interests.

7. Defendant's Statement of Uncontested Facts (Docket # 5, paragraph 9); Plaintiff's Answer to Defendant's Statement of Uncontested Facts (Docket # 13, paragraph 9).

Accordingly, the Court finds that the plaintiff lacks a legally protected interest under the ADA statute.

## II. Imminent and Actual Harm/Causation/Redressability

Ashford has not established that defendant's refusal to approve the building's remodelling has caused a concrete and imminent harm to the plaintiff's legally protected interest. The only injuries which plaintiff can allege are the losses arising from construction delays or the dissolution of the remodelling contract. However, such harm cannot be redressed by this Court. Congress created the A.D.A. to guarantee equal treatment to disabled individuals, not to be used as a last-resort plan to mitigate contract losses.[8]

Plaintiff claims that the defendant's reluctance to approve the project has left it with a veritable Hobson's Choice[9]. Plaintiff poses its dilemma in its Memorandum in Opposition to Defendant's Motion for Summary Judgment (Docket # 13, p. 6).

[P]laintiff ... in fact is suffering the injury caused by the inability to commence and delay of this project. [I]f ... the plaintiff approves the construction and signs a contract, it is faced with defendant's forewarned legal action which would halt the project pending the outcome of defendant's claim of lack of unanimous consent. Then, if it is determined that the plaintiff needed the unanimous consent of the co-owners

before commencing the construction, the plaintiff would be liable to the contractor for money damages arising from a breach of contract it can no longer fulfill. If on the other hand, plaintiff were to prevail, it would still be liable towards the contractor for all construction cost overruns and expenses caused by these delays. If plaintiff choose[sic] to discard the project all together, then it is left exposed to the threat of any disabled individual who could file a claim against the building for failure to comply with the ADA.[10]

"The only effective legal remedy", concludes the plaintiff, "is seeking a declaratory judgment." [11]

Plaintiff's plea fails to persuade this Court. Plaintiff seeks the sympathy of the Court by posing itself as a modern Ulysess sailing between Scylla and Charybdis[12], facing the twin monsters of cost overruns and potential lawsuits. But as noted by Judge Stahl of the First Circuit Court, "sympathy cannot justify sophistry." *Hughes v. Boston Mutual Life Insurance Co.*, 26 F.3d 264, 268–69 (1st Cir. 1994). The law of Puerto Rico is clear with regards to the unanimous consent required for remodelling a building that is subject to the Puerto Rico Horizontal Property Law. At the time when plaintiff submitted its second proposal, the Puerto Rico law required the unanimous approval of all the co-owners. Plaintiffs, despite knowing that they needed

---

8. 42 U.S.C.A. § 12101(b), titled "Purpose", reads: "It is the purpose of this chapter:

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination **against individuals with disabilities;**
(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against **individuals with disabilities;**
(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of **individuals with disabilities;** and
(4) to invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced **day-to-day by people with disabilities"** (emphasis added) 42 U.S.C.A. 12101(b) (West 1995).

9. This oft-quoted phrase in judicial circles refers to the choice of taking either that which is of-

fered or nothing; that is, the absence of a real alternative. *See Texas Monthly Inc. v. Bullock*, 489 U.S. 1, 28, 109 S.Ct. 890, 906, 103 L.Ed.2d 1 (1989); *Belknap, Inc. v. Hale*, 463 U.S. 491, 522, 103 S.Ct. 3172, 3189, 77 L.Ed.2d 798 (1983).

10. Plaintiff's Memorandum in Opposition to Defendant's Motion for Dismissal and Summary Judgment (Docket # 13, pp. 6–7)

11. *Id.*

12. This classical allusion from Homer's *Odyssey* refers to a situation where a person faces two equally perilous alternatives, neither of which can be passed without encountering and probably falling victim to the other. *See Stone v. Immigration and Naturalization Service*, —— U.S. ——, ——, 115 S.Ct. 1537, 1540, 131 L.Ed.2d 465 (1995); *Madsen v. Women's Health Center*, —— U.S. ——, ——, 114 S.Ct. 2516, 2538, 129 L.Ed.2d 593 (1994).

and lacked the co-owners' unanimous approval, went ahead with the impending plans for construction. (See Motion Requesting Urgent Order, Docket # 16) As the date of the performance of the contract approaches, plaintiff seeks shelter in this judicial forum to compel approval of its proposal. But the Court cannot help. Plaintiff's economic losses are self-inflicted.

In view of the above discussion, the Court finds that plaintiff Ashford has not proved an imminent and actual harm, as caused by the defendant, that can be redressed by this Court.

### III. Prudential Considerations

The prudential considerations that courts take into account to determine standing, also counsel against conferral of jurisdiction for this Court in the present case. Plaintiff Ashford has not asserted its own interests, but rather those rights and interests of a third party (see footnote 6). Furthermore, Ashford does not present a claim that arguably falls within the zone of interest protected by the A.D.A. Finally, Ashford's petition for declaratory judgment advances abstract questions of wide public significance essentially amounting to generalized grievances more appropriately addressed to the representative branches of government. This last factor is particularly significant in this case, where plaintiff seeks a declaratory judgment to invalidate a section of the Puerto Rico Horizontal Property Act. The Court should not lightly undertake such a task.

### CONCLUSION

Upon consideration of the issues discussed above, we find that the plaintiff has failed to establish the jurisdictional basis to pursue his claim in this Court. Accordingly, we **GRANT** defendants' Motion for Summary Judgment (Docket # 5). We also **DENY** plaintiff's Counter Motion for Summary Judgment (Docket # 13). Thus, the instant complaint is **DISMISSED.** Judgment shall be issued accordingly.

**SO ORDERED.**