In re NEWCARE HEALTH
CORPORATION,
Debtor.

Sentinel Trust Company, Appellant,

v.

Newcare Health Corporation
and William A. Brandt, Jr.,
Examiner, Appellees.

BAP No. MW 99–097.

United States Bankruptcy Appellate Panel
of the First Circuit.

Feb. 4, 2000.

Paul R. Salvage, Bacon & Wilson, P.C., Springfield, MA, for Sentinel Trust Co.

Victor G. Milione, Nixon–Peabody, Boston, MA, for Newcare Health Corp.

Richard Mikels, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, MA, for William Brandt.

Steven Weiss, Shatz Schwartz & Fentin, P.C., Springfield, MA, for Lenox Health Care.

Before: VOTOLATO, DE JESÚS, and VAUGHN, U.S. Bankruptcy Judges.

SARA E. DeJESUS, Chief Judge.

Sentinel Trust Company (Sentinel), appeals a ruling by the Bankruptcy Court for the Western District of Massachusetts, which held that Sentinel lacks standing to pursue its emergency motion compelling the Examiner and Debtor "... to account for and turn over all cash collateral". On appeal Sentinel argues that it has standing to pursue its claim under 11 U.S.C. § 1109(b)(2) and Fed.R.Bank.P.2018, 7071. Because Sentinel's assertions of standing are barred by "prudential standing rules," we affirm.

## BACKGROUND

Newcare Health Corp. and various affiliated entities (Debtors) filed for relief under Chapter 11 of the U.S. Bankruptcy Code. The Debtors also managed and/or

have an interest in several "Non–Filed Entities."

Sentinel is the indenture trustee under six separate bond issues with principal totaling $51,285,000. One or more of the Debtors are involved either as borrowers or guarantors under the bond issues, and/or as managers for the related "Non–Filed Entities." Sentinel contends that its collateral encumbers all the "Non–Filed Entities"' assets, including accounts receivable and cash collateral, securing payment of the obligations owing on the bonds.

Debtors filed a second request for interim post-petition financing and Sentinel objected, arguing that certain funds received by Debtors belonged to the "Non–Filed Entities," and were collateral in which Sentinel had a security interest. During the July 8, 1999 hearing, Debtors, Sentinel and other parties informed the court that they were able to agree on certain matters. Those agreed upon items were incorporated in the order allowing the post petition financing, as follows:

> [T]he security interest and liens granted in the DIP Loan Documents shall not attach to or create a security interest in or lien upon any of the assets, including the real property, improvements, furniture, fixtures, equipment, general intangibles, contract rights, accounts receivable, revenues, income, receipts, money or proceeds of same, owned or generated by any non-debtor entities and shall not affect any of the security interests or liens currently existing on such non-debtor entity assets. Further, Debtors shall not themselves cause to deposit, or cause any entity over which they have control or a contracted relationship to deposit, cash generated from any non-debtor entities to be paid into any debtor-in-possession accounts maintained by the Debtors. To the extent Debtors have the authority or control over any non-debtor entities,
>
> Debtors shall cause non-debtor entities to establish and maintain separate bank accounts into which only non-debtor funds will be deposited. The super-priority liens obtained by the DIP Lender pursuant [to] this Second Interim Order shall be subject to and subordinate to all valid, prior-perfected enforceable liens securing any obligations of the Debtors to Sentinel Trust Company. Sentinel Trust Company shall have the right to an accounting of all funds received by Debtors from non-debtor entities since the Petition Date. In the event non-debtor entity funds are deposited into debtor-in-possession accounts in violation of this Second Interim Order, Sentinel Trust Company's liens in such non-debtor funds shall be preserved. The Debtors shall cause said funds to be immediately redeposited into the non-debtor accounts and provide an accounting to Sentinel Trust Company and DIP Lender of same.[1]

On August 20, 1999, the Court appointed William Brandt as examiner with expanded powers. About one month later, Sentinel filed a motion under 11 U.S.C. § 105, to compel "the Examiner and/or Debtors to account for and turn over immediately all Cash Collateral ... collected from the Non–Filed Entities ... since the petition date."[2] At the hearing the Bankruptcy Judge denied the motion, finding Sentinel lacked standing because it was asserting rights of the "Non–Filed Entities." He also viewed Sentinel's request as an attempt

> to Trustee-process the Examiner. Sentinel has a right against entities and says that those entities have rights against the Examiner, and so Sentinel wants to Trustee-process the monies in the hands of the Examiner for its benefit. But a secured creditor is not entitled to do that without seizing the rights to the receivables of a debtor because a secured creditor under most variations

---

1. App. Exhibit 2 at p. 7.

2. See App. Exhibit 3.

of loan documents, and clearly in this kind of case, does not want to be accused of having control until it absolutely has to take it.[3]

This appeal ensued.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review pursuant to 28 U.S.C. § 158(b). The scope of our review is *de novo*. *Benjamin v. Aroostook Medical Center, Inc.*, 57 F.3d 101, 104 (1st Cir.1995)

## ISSUE

Does Sentinel have standing to ask the Court to order the Examiner to account for and turnover funds allegedly belonging to the "Non–Filed Entities" and over which Sentinel claims a security interest?

## DISCUSSION

### A. Standing

■ Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Hence, "a defect in standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent." *U.S. v. AVX Corp.*, 962 F.2d 108, 116 n. 7 (1st Cir.1992).

■ The inquiry into standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth*, 422 U.S. at 498, 95 S.Ct. 2197. "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Id.* Apart from this minimum constitutional mandate, the Supreme Court recognizes other limits " . . . on the class of persons who may invoke the courts' decisional remedial powers." *Id.* at 499, 95 S.Ct. 2197. These prudential limitations are self-imposed rules of judicial restraint:

These considerations, which militate against standing, principally concern *whether the litigant (1) asserts the rights and interests of a third party and not his or her own,* (2) presents a claim arguably falling outside the zone of interests protected by the specific law invoked, or (3) advances abstract questions of wide public significance essentially amounting to generalized grievances more appropriately addressed to the representative branches.

*Benjamin v. Aroostook Medical Center, Inc.*, 57 F.3d at 104 (emphasis added).

■ "The burden of alleging facts necessary to establish standing falls upon the party seeking to invoke the jurisdiction of the court. . . . In conducting our review, we are obliged to 'accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party.'" *Id.* (quoting *Warth*, 422 U.S. at 501, 95 S.Ct. 2197) (other citations omitted).

### B. Standing under § 1109(b)

■ Sentinel first argues that this section confers upon it standing to pursue the turnover of "Non–Filed Entity" funds held by the Examiner, because it is an indenture trustee and/or a party in interest.

§ 1109(b) states:

A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

An " 'indenture' means a mortgage, deed or trust, or indenture under which there is outstanding a security . . . *constituting a claim against the debtor, a claim secured by a lien on any of the debtor's property, or an equity security of the debtor.*" 11 U.S.C. § 101(28) (emphasis added).

---

**3.** App. Exhibit 6 at p. 28, and also pp. 9, 11, 12, 15.

We review Sentinel's allegations under the standard set by Fed.R.Civ.P. 12(b)(6) to see whether it is indeed a § 1109(b) indenture trustee with standing in the contested matter. *AVX Corp.*, 962 F.2d at 115. The allegations do not establish that Sentinel is a creditor in this case. Indeed, Sentinel admits it has not filed a proof of claim, even though it may be in the process of so doing. Sentinel also acknowledges that the funds sought are not estate funds and that the collateral assuring payment to the bondholders is not property of this bankruptcy estate. Sentinel does not aver that it has "... a claim secured by a lien on ... an equity security of the debtor." 11 U.S.C. § 101(28). The allegations simply state that the Debtor manages some "Non–Filed Entities"' nursing, assisted and independent living homes or is a borrower or guarantor of these "Non–Filed Entities." As of the date of the hearing, Sentinel was not an indenture trustee.

■ Next Sentinel contends it is a party in interest under this section because the section's list of qualified entities is not exhaustive. We agree that the list is not all inclusive. But *Southern Boulevard, Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y.1997), states that a: "party claiming to be a 'party in interest' must still satisfy the general requirements of the standing doctrine." We thus limit our examination to the first consideration of prudential standing rules, that is, whether Sentinel asserts the rights and interests of a third party and not its own interest. Stated in other words, is Sentinel the proper proponent of the rights sought here to be enforced?

Sentinel concedes that it has not seized the cash, executed the liens, nor filed actions for conversion. The bankruptcy court held that Sentinel was not the proper proponent because, until it seized the funds or executed its lien, the cash belonged to the "Non–Filed Entities." Sentinel, relying on *Harley–Davidson Motor Co., Inc. v. Bank of New England—Old*

*Colony*, 897 F.2d 611 (1st Cir.1990), argues on appeal that the bankruptcy court erred.

In *Harley*, the Court was concerned with the manufacturer's and finance company's action to recover converted proceeds from the sale of motorcycles. Here, Sentinel concedes it has not filed a suit to recover converted proceeds.

In *Harley*, the Court states: "And, case law supports the proposition that, when a debtor makes an unauthorized transfer of collateral, and when that transfer constitutes a default under the terms of a security agreement, the secured party obtains an immediate right to the collateral, permitting him to maintain an action for conversion." *Harley–Davidson*, 897 F.2d at 617. Sentinel asserts that the bond issues are in monetary difficulty, and that it is in different stages of enforcing its rights. Sentinel advised the bankruptcy court that five of the bond issues were in default with Sentinel making demands for payment, and that another one was in state court receivership. This statement was repeated on appeal with more details. However, Sentinel did not produce the documents authorizing the secured party to seize the cash in case of default, as there were seven or eight documents, each consisting of 20,000 pages. Sheer volume, together with allegations of ongoing reviews, were the excuses given for not producing the agreements. Furthermore, Sentinel's counsel could not attest to the existence of such a clause, because Sentinel had not provided him with the documents when he appeared before the bankruptcy court.

■ Lastly, Sentinel argues that the bankruptcy court conferred upon it the status of party in interest with standing by allowing Sentinel to object and settle its objection to Debtor's request for second interim post petition financing, by preserving Sentinel's interest in "carved out" funds held by the Examiner as part of its September 30, 1999 order authorizing sale of the debtor's assets, and by allowing it to examine the Debtor under a Fed.

R.Bankr.P. 2004 examination. Sentinel argues that since no one raised the issue of standing on those two occasions, the right to do so was waived. We reject this argument because the question of standing is jurisdictional, cannot be waived, and remains open to review during all stages of the litigation. *Libertad v. Welch,* 53 F.3d 428, 435 (1st Cir.1995).

Sentinel also argued on appeal that the bankruptcy judge's decision would bar it from returning to the bankruptcy court for the purpose of seeking *any* relief. We disagree. In bankruptcy, a party may have standing for some matters and not for others. *See In re Tascosa Petroleum Corp.,* 196 B.R. 856 (D.Kan.1996). Simply stated, Sentinel did not establish its standing *in this matter,* i.e., it failed to produce facts needed by the bankruptcy court to determine its right to the funds under the criteria set forth in *Harley–Davidson.*

### C. Standing under Fed.R.Bankr.P. 7071.[4]

This rule allows a person who is not a party to the action, to enforce a court order in its favor. Sentinel invokes this rule to sustain its request for both the turnover of funds and for an independent accounting, arguing that the second interim post petition financing order renders both of these rights enforceable under Rule 7071. We disagree.

While Sentinel may have standing to enforce certain rights under this Rule, the transcribed, unequivocal language of the settlement incorporated in the order does not grant it the right to receive any cash collateral held by the Examiner, or the right to an accounting performed by a

person or entity other than the Examiner or Debtor.[5]

### D. Standing under Fed.R.Bankr.P. 2018.

Rule 2018(a) allows the court discretion to permit a person to intervene in the case generally, or in any specified matter. Sentinel states this Rule should be read in conjunction with § 1109 in cases filed under Chapters 9 or 11. Sentinel argues that the bankruptcy court applied the Rule, allowing it to intervene in the contested matter of the second interim post petition financing and in the Rule 2004 examination. And that since the bankruptcy court did not limit Sentinel's intervention to a specified or discrete matter within the case, it gave Sentinel all rights and interests in the proceeding conferred to a party in interest by § 1109(b), with standing to compel the Examiner to turnover any cash collateral and submit to an independent accounting. This argument is rejected because parties in interest must nevertheless, under § 1109(b), still meet the prudential standing rules to invoke the court's jurisdiction.

### CONCLUSION

For the reasons stated in this opinion we affirm the bankruptcy court's order dismissing Sentinel's "Emergency Motion to Compel the Debtors and the Examiner to Account For and Turnover Cash Collateral to Sentinel Trust Company."

---

**4.** Fed.R.Bankr.P. 9014 and 7071 apply Rule 71 of Fed.Civ.P. to contested matters and adversary proceedings. Rule 71 states:

When an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party; and, when obedience to an order may be lawfully enforced against a person who is not a party, that person is liable to the same process for

enforcing obedience to the order as if a party.
Fed.R.Civ.P. 71.

**5.** If Sentinel merely requested an accounting of the funds in question rather than an "independent accounting" it may have had standing under Rule 71. By seeking more than it was entitled to under the prior court order, Sentinel attempted to stretch Rule 71 beyond its limits.