Josue ORTA RIVERA Plaintiff

v.

CONGRESS OF THE UNITED STATES OF AMERICA, et als. Defendants

No. CIV.03–1684 (SEC).

United States District Court, D. Puerto Rico.

Sept. 28, 2004.

Angel L. Morales–Rodriguez, Nicolas Nogueras–Cartagena, Nicolas Nogueras, Jr. Law Offices, San Juan, PR, for Josue Orta–Rivera, Plaintiff.

Grant R. Vinik, Office Senate Legal Counsel, Morgan J. Frankel, Office Senate Legal Counsel, Patricia Mack Bryan, Office Senate Legal Counsel, Thomas E. Caballero, Office Senate Legal Counsel, Washington, DC, for Congress of the United States of America, Ted Stevens, Richard B. Cheney, William H. Pickle, Emily Reynolds, Dennis Hastert, Jeff Trandahl, Daniel Akaka, Lamar Alexander, Wayne Allard, George Alleg, Max Baucus, Evan Bayh, Robert Bennett, Joseph Biden, Jeff Bingaman, Christopher Bond, Barbara Boxer, Sam Brownback, John Breaux, Jim Bunning, Conrad Burns, Robert Byrd, Ben Campbell, Maria Cantwell, Thomas Carper, Lincoln Chafee, Saxby Chambliss, Hilary Clinton, Thad Cochran, Norm Coleman, Susan Collins, Kent Conrad, John Cornyn, Jon Corzine, Larry Craig, Michael Crapo, Thomas Daschle, Mark Dayton, Mike Dewine, Christopher Dodd, Elizabeth Dole, Pete Domenici, Byron Dorgan, Richard Durbin, John Edwards, John Ensign, Michael Enzi, Russell Feingold, Dianne Feinstein, Peter Fitzgerald, Bill Frist, Bob Graham, Lindsey Graham, Chuck Grassley, Judd Gregg, Chuck Hagel, Tom Harkin, Orrin Hatch, Ernest Hollings, Kay Hutchinson, James Inhofe, Daniel Inouye, James Jeffords, Tim Johnson, Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is the U.S. Senate's and House of Representatives' (Defendants) respective motions to dismiss the above captioned matter (**Dockets ## 6 & 10**). Plaintiff has opposed both motions (**Dockets ## 15 & 22**). After carefully

examining the parties' arguments and the applicable law, we will **GRANT** Defendants' motions and proceed to **DISMISS** the case at hand.

### Background

In this action, Plaintiff Josué Orta Rivera, a statehood advocate, has brought suit against the United States Congress, every Senator and Representative, Vice President Richard B. Cheney as the President of the Senate, and three congressional officers, challenging Congress' alleged failure to take action and determine the "final" political status of the Commonwealth of Puerto Rico.[1] Plaintiff claims that the 1898 Treaty of Paris between the United States and the Kingdom of Spain, imposed on Congress a duty to determine the political status and the civil rights of the inhabitants of Puerto Rico. Plaintiff further asserts that Congress' actions towards Puerto Rico—granting United States citizenship to the inhabitants of Puerto Rico, establishing Puerto Rico as a Commonwealth, and permitting it to adopt a constitution to govern its internal affairs—have not fulfilled Congress' duty under the Treaty, but rather have left Puerto Rico's political status in limbo between statehood and full independence. Plaintiff avers that at least since July 25, 1952,the date on which the Puerto Rican Constitution was adopted, Congress had the duty to end the colonial status of Puerto Rico but has refused to do so.

Plaintiff asserts that Congress has left Puerto Rico in a colonial status, as demonstrated by the fact that he, like all citizens of Puerto Rico, have no representatives in Congress and cannot vote for the President and Vice President of the United States. Plaintiff further asserts that Congress' alleged failure to fulfill its responsibility under the Treaty of Paris to determine the civil rights and the political status of the inhabitants of Puerto Rico has left him in a situation where, although he advocates statehood for Puerto Rico, he finds no way to cast his vote to attain said goal.[2] Therefore, as relief, Plaintiff requests that the Court order Congress to determine immediately the "final" political status and the civil rights of the people of Puerto Rico, as well as, award him monetary damages for the intentional infliction of emotional distress, humiliation, and loss of self-esteem, caused by Congress' refusal to comply with the Treaty of Paris.

### Applicable Law and Analysis

Defendants argue that Plaintiff's amended complaint should be dismissed on several grounds. First, that Plaintiff's allegations wholly fail to demonstrate a legally cognizable injury-in-fact fairly traceable to the Defendants that could be redressed by this suit, and, thus, Plaintiff lacks standing to raise his claims. Second, that Plaintiff's suit asserts claims against Senators and Senate officers for actions that fall within

---

**1.** The three congressional officers are the Secretary of the Senate, Emely Reynolds; the Senate Sergeant at Arms, William H. Pickle; and the Clerk of the House, Jeff Trandahl.

**2.** On three distinct occasions Puerto Ricans have had the opportunity to cast their vote regarding the status of Puerto Rico. The first plebiscite was held in 1967. On that occasion, 60.4 % of Puerto Ricans voted in support of the current status quo, commonwealth, 39.0 % voted for statehood, and 0.6 % for independence. Again in 1993 the Puerto Rican people were consulted and, again the

majority elected the current commonwealth status (48.6 %) over statehood (46.3 %) and independence (4.4%). Most recently in 1998, the people of Puerto Rico were presented with five choices defining a possible status. The definition with the majority of the votes was to be formally presented to Congress as an official petition. On this last occasion, 50.3 % voted under the "none of the above" alternative; therefore, rejecting all of the other definitions presented including statehood which collected 46.5 % of the votes.

the legislative sphere and therefore, said actions (or inactions) are protected by the Speech and Debate Clause of the Constitution. Third, that Congress is protected from Plaintiff's suit by sovereign immunity. Fourth, that Plaintiff's claims involve matters textually committed by the Constitution to Congress, and as to which there is a lack of judicially manageable standards and, thus, Plaintiff's amended complaint presents a non-justiciable political question. Fifth, that the Court lacks personal jurisdiction over the Defendants and finally, that venue in this Court is improper.

As a preliminary matter, we shall address Plaintiff's challenge to the appearance of Attorney David Plotinsky as counsel for the House of Representatives and Attorney Patricia Mack Bryan as counsel for the Senate. In essence, Plaintiff contends that counsel lack the necessary authorization to appear as counsel for Defendants since 1) there is nothing in the record indicating whether counsel are admitted to practice law, 2) no request to appear *pro hac vice* has been filed with the Court and, 3) no document has been presented indicating under which authority counsel have appeared on behalf of Defendants. However, after examining the applicable law, we find that Plaintiff's challenge is unfounded. We explain.

■ Attorney David Plotinsky has appeared before this Court as Assistant Counsel of the Office of General Counsel for the U.S. House of Representatives. Said Office is vested by law to carry out counsel functions for the House of Representatives and enter appearance in any proceeding before any court of the United States without having to comply with any requirement for admission to practice before such court. *See* 2 U.S.C. § 130f(a). The same can be said for Attorney Patricia Mack Bryan who has appeared as counsel

for the Office of Senate Legal Counsel. *See* U.S.C. §§ 288b(a), 288c(a), and Senate Resolution 226, 108th Cong., 1st Sess., reprinted in 149 Cong. Rec. S11587 (daily ed. September 16, 2003). This matter settled, we proceed to examine the arguments raised by the parties.

■ Although the Court has taken into consideration all of the arguments presented in Defendants' motions and, upon analysis of these arguments and the applicable law, we conclude that Defendants' arguments are on point, we must first address, because of its jurisdictional nature, Defendants' contention that Plaintiff lacks standing to bring the instant claim. Upon review of the applicable law and the parties' arguments, we agree with Defendants in that Plaintiff does not possess standing to bring the instant suit. This issue being determinative, we need not to discuss the other issues raised by Defendants. We now proceed to discuss Plaintiff's standing.

■ "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Col. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Indeed, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). A vital part of Article III's case or controversy limitation on the power of federal courts is the requirement that a plaintiff must have standing to invoke federal court jurisdiction. *See Valley Forge*, 454 U.S. at 471–73, 102 S.Ct. 752; *Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1374 (1st Cir.1992). "[S]tanding is a threshold issue, determining whether the court has the power to hear the case, and

whether the putative plaintiff is entitled to have the court decide the merits of the case." *Libertad v. Welch,* 53 F.3d 428, 436(1st Cir.1995) (*citing United States v. AVX Corp.,* 962 F.2d 108, 113 (1st Cir. 1992)). If a plaintiff lacks standing to bring a matter before a court, the court lacks jurisdiction to decide the merits of the underlying case. *AVX Corp.,* 962 F.2d at 113.

■ A party seeking to invoke a federal court's jurisdiction bears the burden of establishing his/her standing to sue. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Benjamin v. Aroostook Med. Ctr. Inc.,* 57 F.3d 101, 104 (1st Cir.1995) ("The burden of alleging facts necessary to establish standing falls upon the party seeking to invoke the jurisdiction of the federal court."). To satisfy that burden, a plaintiff must demonstrate the three elements that form the "irreducible constitutional minimum of standing" under Article III:(1) that he or she "ha[s] suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) that the injury was caused by, or is "fairly... trace[able] to the challenged action of the defendant" and, (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130 (internal quotation marks and citations omitted); *Benjamin,* 57 F.3d at 104; *Libertad,* 53 F.3d at 436. If a plaintiff fails to satisfy the prerequisites for Article III standing, the Court lacks jurisdiction and must dismiss the complaint. *See Valley Forge,* 454 U.S. at 475–76, 102 S.Ct. 752 ("Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States.").

In the instant case, Plaintiff's allegations fail to establish Article III standing. First, Plaintiff has not articulated any harm to a concrete and particularized "legally protected interest" from Congress' alleged failure to take "final" action regarding Puerto Rico's political status. Plaintiff alleges that he suffers harm because he lacks representatives in Congress and cannot vote for the President and Vice President of the United States. However, Plaintiff overlooks the fact that this matter has already been decided by the Court of Appeals for the First Circuit. The First Circuit has held that a Puerto Rican resident, although an American citizen, has no constitutional right to vote for President and Vice President, *Igartua De La Rosa v. United States,* 32 F.3d 8, 9–10 (1st Cir. 1994) ("*Igartua I*"); *Igartua De La Rosa v. United States,* 229 F.3d 80, 84–85 (1st Cir.2000) ("*Igartua II*"), as the Constitution, Art. II, § 1, cl. 1, specifically provides that the electors for those offices be chosen by "each State... in such manner as the Legislature thereof may direct," and Puerto Rico is not a state. Under the same rationale, Plaintiff does not have a constitutional right to be represented in Congress, as the Constitution specifically states that the "Senate... shall be composed of two Senators from each *State,* elected by the people thereof," U.S. Const. Amend. XVII, and that the "House of Representatives shall be composed of Members chosen..., by the People of the several *States,*" U.S. Const. art. I, § 2, cl. 1 (emphasis added); *see Adams v. Clinton,* 90 F.Supp.2d 35, 50–56 (D.D.C.2000)(holding that the District of Columbia is not a state and thus not entitled to representation in Congress under Article I of the Constitution). Accordingly, Plaintiff's allegation that he has no representation in Congress and is unable to vote for President and Vice President does not qualify as an injury-in-fact for standing purposes

because Plaintiff has no "legally protected interest" in voting for the President and Vice President and being represented in Congress.

██ Plaintiff also appears to allege that he has standing because he, like all "American citizens of Puerto Rico," is a third party beneficiary of the Treaty of Paris and he has suffered harm from Congress' alleged failure to comply with its duty under the Treaty to provide for the political status and civil rights of Puerto Rico's inhabitants. However, such an allegation of harm is not sufficient to give Plaintiff standing to seek to enforce a treaty provision against the government.

"It is well established that individuals have no standing to challenge violations of international treaties in the absence of a protest by the sovereigns involved." *Matta–Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir.1990); *United States ex. rel. Lujan v. Gengler*, 510 F.2d 62, 67 (2d Cir.1975). "[I]t is a settled principle of both public international law and American constitutional law that unless a treaty or intergovernmental agreement is 'self-executing' that is, unless it expressly creates privately enforceable rights, an individual citizen does not have standing to protest when one nation does not follow the terms of such agreement." *United States v. Bent–Santana*, 774 F.2d 1545, 1550 (11th Cir.1985); *see also United States v. Zabaneh*, 837 F.2d 1249, 1261 (5th Cir.1988) ("Treaties are contracts between or among independent nations. The treaty provisions in question were designed to protect the sovereign interests of nations, and it is up to the offended nations to determine whether a violation of sovereign interests occurred and requires redress."). Indeed, "even where a treaty provides certain benefits for nationals of a particular state such as fishing rights—it is traditionally held that 'any rights arising from such provi-

sions are, under international law, those of [the] states and.., individual rights are only derivative through the states.' " *Gengler*, 510 F.2d at 67 (quoting *Restatement (Second) of the Foreign Relations Law of the United States* § 115, comment *e* ), quoted in *Matta–Ballesteros*, 896 F.2d at 259. Accordingly, Plaintiff has no standing as an individual citizen to assert a claim based on his alleged injury as a "third party beneficiary" of a treaty commitment that Congress has purportedly failed to satisfy.

██ Plaintiff's only other allegation of harm is that his dignity, pride, and honor are being affected by the present colonial status. Such an abstract psychological injury, without any demonstration of a personal, cognizable injury to Plaintiff arising as a consequence of Defendants' actions, does not constitute an injury-in-fact under Article III. *See Valley Forge*, 454 U.S. at 485–86, 102 S.Ct. 752. That Plaintiff is discouraged by Puerto Rico's current political status does not constitute an injury to a concrete and particularized legally protected interest. "[S]tanding is not measured by the intensity of the litigant's interest or the fervor of his advocacy"; such fervor "is not a permissible substitute for the showing of injury itself." *Id.* at 486, 102 S.Ct. 752; *see also AVX Corp.*, 962 F.2d at 114 ("A mere interest in an event—no matter how passionate or sincere the interest and no matter how charged with public import the event—will not substitute for an actual injury.") (citations omitted). Plaintiff's claim also constitutes a "generalized grievance," which courts "refrain from adjudicating." *Id.*; *see also Benjamin*, 57 F.3d at 104 (that plaintiffs' claim "advances abstract questions of wide public significance essentially amounting to generalized grievances more appropriately addressed to the representative branches" is a consideration that "mili-

tates against standing") (*citing Libertad,* 53 F.3d at 436). Thus Plaintiff's generalized grievance cannot substitute the injury-in-fact required to establish standing.

In addition to failing to demonstrate an injury-in-fact, Plaintiff's allegations also falls short of demonstrating that the harm he alleges was caused by, or is traceable to, the actions of the individual Senate or House Defendants. Plaintiff makes no specific allegations against the individual Defendants. Moreover, neither the individual Senators, Representatives, the Vice President, nor the Secretary or Sergeant at Arms can determine the political status of Puerto Rico, which is a legislative power given to the Congress as a whole.

 Plaintiff also fails the redressability prong of the standing test, as the harm he alleges is not redressable by Defendants. Granting statehood or independence to Puerto Rico requires legislative action by Congress, subject to Presidential veto, and none of the individual Defendants can make Congress as a whole enact legislation granting Puerto Rico statehood or independence, or control whether the President signs or vetoes such legislation.[3]

---

**3.** It would also appear that Congress, lacking the consent of the Puerto Rican people, may not enact legislation to alter the status of Puerto Rico. We explain. The legislative history of the relationship between Puerto Rico and the United States leading up to the establishment of the Commonwealth of Puerto Rico on July 25, 1952, has been recounted on numerous occasions, and thus there is no need to rehash it here. *See U.S. v. Vega Figueroa,* 984 F.Supp. 71 (D.P.R.1997). Still, a brief review is warranted. On July 3, 1950, Congress, "fully recognizing the principle of government by consent," adopted Public Law No. 600, "in the nature of a compact," to empower the people of Puerto Rico "to organize a government pursuant to a constitution of their own adoption." 64 Stat. 319, 319 (1950), 48 U.S.C. § 731b ( hereinafter "Public Law 600"). In accordance with its terms, Public Law 600 was submitted to, and accepted by, the people of Puerto Rico in a referendum held on June 4, 1951, upon which a constitutional convention was called by the Legislature of Puerto Rico to draft a constitution. A constitution was adopted by the people of Puerto Rico in a referendum held on March 3, 1952, and subsequently transmitted, via the President, to Congress for approval. The constitution was approved by Congress on July 3, 1952, "as a compact with the people of Puerto Rico." *See* Public Law No. 447, 66 Stat. 327, 327 (1952). With the acceptance of Congress's conditions, the constitution was ultimately approved by the people of Puerto Rico, "the compact became effective, and Puerto Rico assumed Commonwealth status." *Examining Bd. of Eng'rs v. Flores de Otero,* 426 U.S. 572, 593–94, 96 S.Ct. 2264, 49 L.Ed.2d 65(1976).

In sum, after 1952, Puerto Rico's status changed from that of a mere territory to the unique status of Commonwealth. The federal government's relations with Puerto Rico changed from being bounded merely by the territorial clause, and the rights of the people of Puerto Rico as United States citizens, to being bound by both the United States and Puerto Rico Constitutions, Public Law 600, the Puerto Rican Federal Relations Act and the rights of the people of Puerto Rico as United States citizens. *Cordova & Simonpietri Ins. Agency, Inc. v. Chase Manhattan Bank, N.A.,* 649 F.2d 36, 41 (1st Cir.1981); *See also U.S. v. Lara,* —— U.S. ——, ——, 124 S.Ct. 1628, 1635, 158 L.Ed.2d 420 (*citing Cordova & Simonpietri,* 649 F.2d at 39–41). Thereafter, **the authority exercised by the federal government emanates from the compact entered into between the people of Puerto Rico and the Congress of the United States.** This compact between the people of Puerto Rico and the United States has been repeatedly recognized by the Supreme Court. *See Calero–Toledo v. Pearson Yacht Leasing. Co.,* 416 U.S. 663, 672, 94 S.Ct. 2080, 40 L.Ed.2d 452 (noting that the Commonwealth "is a political entity created by [Public Law 600] and **with the consent of the people of Puerto Rico** and joined with the United States of America under the terms of the compact") (emphasis ours). In the instant case, Plaintiff makes no allegation indicating that the majority of the Puerto Rican people have given their consent and requested that Congress define the status of Puerto Rico in any another way different from the current status quo. Therefore, in light of this trajectory, we find that Plaintiff

Nor is Plaintiff's alleged harm redressable against the Congress. Plaintiff requests that the Court order Congress to immediately proceed to comply with the Treaty of Paris, by determining the final political status and civil rights of the Puerto Rican people. However, under the immunity granted by the Speech and Debate Clause of the Constitution, a federal court lacks power to command Congress or individual members of Congress to take legislative action. *See Newdow v. U.S. Congress*, 328 F.3d 466, 484 (9th Cir.2003) ("[I]n light of the Speech and Debate Clause of the Constitution, Art. I, § 6, cl. 1, the federal courts lack jurisdiction to issue orders directing Congress to enact or amend legislation."), *petitions for cert. filed*, 71 U.S.L.W. 3708, 3724 (U.S. Apr. 30, 2003) (Nos.02–1574, 02–1624); 72 U.S.L.W. 3092 (U.S. June 26, 2003) (No. 03–7). Furthermore, in light of the separation of powers among the branches of government that underlies the political question doctrine, this Court has no authority to order Congress to take action on matters specifically delegated to Congress by the Constitution, U.S. Const. Art. IV, § 3, cl. 1 ("New States may be admitted by the Congress into this Union"), and cl. 2 ("The Congress shall have the Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."). *Trimble v. Johnston*, 173 F.Supp. 651, 653 (D.D.C.1959) ("[T]he Federal courts may not issue an injunction or a writ of mandamus against the Congress."). Thus, Plaintiff's alleged harm is not redressable through his suit against Defendants.

In conclusion, we find that Plaintiff's allegations fail to establish a legally cognizable injury-in-fact fairly traceable to the Senate or House Defendants that could be redressed by this suit and, thus, Plaintiff has failed to establish a valid reason to support the requested relief.

lacks standing to bring his claims. Accordingly, Defendants' motions are **GRANTED** and the above captioned matter will be **DISMISSED**.

**SO ORDERED.**